From:FRIPP ISLAND CLUB OFFICE        843 838 9079        05/29/2019 15:40        #927 P.002/007

JUDGE ENGELMAYER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

19 CV 5062

GUY CARPENTER & COMPANY, LLC, and
MARSH & MCLENNAN COMPANIES, INC.,

           Plaintiffs,

v.

TIMOTHY GARDNER, NICHOLAS DURANT,
and CLAUDE YODER,

           Defendants.

Case No. _____

### DECLARATION OF HARTWELL DEW IN SUPPORT OF PLAINTIFFS' ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1. I submit this Declaration in support of Plaintiffs' order to show cause for a temporary restraining order and preliminary injunction. I am familiar with the facts and circumstances stated herein, which are based upon my personal knowledge. If I were called upon to testify, I could and would testify competently as to the facts set forth herein.

**I.**    **My Employment at Guy Carpenter**

2. I have been employed by Guy Carpenter & Company, LLC ("Guy Carpenter" or the "Company") for almost 22 years. My current job title is Managing Director. During my entire career with the Company, I have been based in Guy Carpenter's Atlanta, Georgia office. Until several years ago, I was the Branch Manager for the Atlanta office, in addition to my other responsibilities at Guy Carpenter as a reinsurance broker.

3. I focus my brokerage practice on property reinsurance, and in that capacity, I have multiple significant clients that I and others on my team service on a regular basis. For example,

From:FRIPP ISLAND CLUB OFFICE          843 838 9079          05/29/2019 15:41          #927 P.003/007

I currently lead a team at Guy Carpenter that handles reinsurance brokerage business for "Client A,"[1] which has been a Guy Carpenter client for over 20 years and generates eight figure revenues annually for the Company.

## II. My Business Dealings with Client A in 2019

4. On February 27, 2019, I traveled to the corporate headquarters of Client A for my annual "Year-End Wrap-Up Meeting." This is a regularly scheduled, annual meeting in which we cover the business that was conducted in the prior year and discuss Client A's reinsurance needs for the upcoming year. This annual meeting involves team members from both Guy Carpenter and Client A; however, shortly before my arrival at Client A's offices, Client A's Chief Executive Officer asked to speak with me privately.

5. In this conversation, I was informed that Client A was going to be putting a portion of its international reinsurance placement out for a Request for Proposal (or "RFP"), and the CEO asked that Guy Carpenter submit an RFP for this work. I, of course, stated that we would be happy to do so.

6. The following day, February 28, 2019, Tim Gardner – who at that time was Guy Carpenter's CEO of North America Operations – joined me at a breakfast meeting with Client A's CEO. Gardner had flown in from Seattle – where he had been attending a Guy Carpenter Branch Managers' meeting the day before – specifically to meet with Client A. I was pleased to have Guy Carpenter's CEO of North America Operations at this meeting, particularly given Client A's decision to issue an RFP for the portion of its international reinsurance placement that

---

[1] Due to confidentiality and business considerations, I am not at liberty to disclose the name of this client in my declaration, but will provide it to the Court upon Your Honor's request.

From:FRIPP ISLAND CLUB OFFICE           843 838 9079            05/29/2019 15:41        #927 P.004/007

I referred to above. I did not know at this meeting that Gardner would announce his resignation from Guy Carpenter just seven days later.

7. On March 7, 2019, Gardner announced his resignation from Guy Carpenter. I learned that he would be going to work at Lockton, a competitor of Guy Carpenter, which was launching a global reinsurance business. I also learned that two other Guy Carpenter senior executives – Nick Durant and Claude Yoder – would be leaving Guy Carpenter and joining Gardner at Lockton Global Re.

8. On April 19, 2019, my team and I presented our RFP to Client A at an in-person meeting that lasted approximately two hours. We were advised at that meeting that no other RFP meetings with competitors had been scheduled as of that date, and that Guy Carpenter had made an effective presentation. Client A advised that they expected to be making their final decision before the end of May 2019.

9. On May 6, 2019, my team and I again visited Client A to discuss their North American business for the year 2020. At the conclusion of that meeting, one of Client A's team members advised me that Guy Carpenter was "looking good" regarding winning the RFP for a portion of Client A's international reinsurance placement.

### III. Defendants' Solicitation of Client A

10. On Friday, May 24, 2019, I received a call from Client A's CEO who informed me that a team from Lockton had just visited Client A the previous day at its corporate headquarters to pursue the same international book of business that Guy Carpenter had pitched for in its RFP on April 19, 2019. As noted above, Lockton is a competitor of Guy Carpenter's

3

that had just recently hired Gardner, Durant, and Yoder, each of whom began working at Lockton in early May 2019.

11. Soon thereafter, I learned from a Client A participant at that meeting (who read me the names on the business cards of the four Lockton Re employees who were present at that business pitch meeting) that Durant and Yoder were among the four from Lockton who were pitching for Client A's business at that May 23, 2019 meeting. I was shocked to learn that Durant and Yoder, who had left Guy Carpenter less than three weeks earlier, had participated in this meeting. Moreover, I was aware that Gardner was serving as Chief Executive Officer of Lockton Global Re, and that Durant and Yoder were both working directly for him.

### IV. My Business Interactions With The Defendants When They Were At Guy Carpenter

12. I had various discussions and business interactions with Gardner about Client A when he was the CEO of North America Operations at Guy Carpenter. As noted above, Gardner and I both attended a meeting with Client A on February 28, 2019 (seven days before he announced his resignation from Guy Carpenter), and Gardner had, for several years, helped to strengthen and maintain Guy Carpenter's relationship with Client A. Gardner also had access to and knowledge of highly detailed and confidential information regarding Client A, including but not limited to its reinsurance programs and needs. Gardner and I had a close working relationship; I reported to him directly for several years, and he set my compensation every year until his resignation.

13. Durant, in his capacity as Guy Carpenter's Head of Sales and Segments, also likely would have had access to confidential and proprietary information concerning clients in Guy Carpenter's property and casualty Segments (which were among the Company's various

4

business Segments that Durant managed). This included confidential information, such as pricing and revenue data, relating to Client A.

14. Yoder and I had several interactions over the past two years. For example, he sent me emails stating that he was interested in having business conversations with certain of my clients, including Client A specifically, about the initiatives he was working on in connection with "InsurTech" (a complex field in which companies use technological innovations to create efficiencies or other improvements in the insurance industry). Among Yoder's InsurTech initiatives was the Guy Carpenter proprietary program, "GC Genesis," which uses proprietary technology to match Guy Carpenter's clients with InsurTech partners.

15. On January 28, 2019, just a little more than one month before he announced his resignation from Guy Carpenter, Yoder presented at the "Executive Roundtable Seminar and Board of Directors Meeting" held in Naples, Florida—a three-day, high-profile learning and networking conference sponsored by the American Property Casualty Insurance Association. Yoder presented on the topic "Data, Analytics, and Technology: Fundamental Forces Driving InsurTech," which, as I noted, was among Yoder's areas of expertise.

16. At the request of the CEO of Client A, I facilitated a one-on-one meeting at that January 2019 conference between the CEO and Yoder specifically to discuss Guy Carpenter's GC Genesis program, and how it could benefit Client A. The CEO advised me that the two of them met during that conference to discuss GC Genesis and InsurTech.

From:FRIPP ISLAND CLUB OFFICE    843 838 9079    05/29/2019 15:43    #927 P.007/007

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 29, 2019

_____
Hartwell Dew