**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUY CARPENTER & CO. and MARSH
& MCLENNAN COS.,

                Plaintiffs,

        v.

TIMOTHY GARDNER, NICHOLAS
DURANT, and CLAUDE YODER,

              Defendants.

Case No. 19-cv-5062 (PAE)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE COMPLAINT

Date:  June 5, 2019

David Elsberg
Joshua S. Margolin
Ryan W. Allison
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY  10104
Telephone: 212-390-9000
E-mail: delsberg@selendygay.com
        jmargolin@selendygay.com
        rallison@selendygay.com

*Attorneys for Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder*

# TABLE OF CONTENTS

<u>**Pages**</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................ 4

I.    Defendants' Employment with Guy Carpenter. ..................................... 5

II.   Defendants Continue to Fulfill Their Employment Responsibilities for Guy Carpenter.................................................................................... 7

III.  Defendants Resign from Guy Carpenter................................................ 9

IV.   Mr. Durant Calls Arthur R. Collins After Joining Lockton Re............... 9

V.    Mr. Durant and Mr. Yoder Meet with Client A After Joining Lockton Re. ...................................................................................................... 9

STANDARD OF REVIEW ..................................................................................... 10

ARGUMENT ..................................................................................................... 11

I.    Plaintiffs Fail to Allege Defendants Violated the Restrictive Covenant Not to Solicit Plaintiffs' Clients (Count II). ........................................ 11

      A.    Restrictive Covenant Are Construed Narrowly. ...................... 11

      B.    Plaintiffs Fail to Allege A Violation of the RCA Provision Against Soliciting Guy Carpenter Clients................................. 12

            1.    Plaintiffs Have Not Alleged that Mr. Durant Breached the RCA by Soliciting Client A. .......................................... 13

            2.    Plaintiffs Have Not Alleged that Mr. Yoder Breached the RCA by Soliciting Client A. .......................................... 14

            3.    Plaintiffs' Have Not Alleged that Mr. Gardner Breached the RCA by Soliciting Client A.......................................... 15

II.   Plaintiffs Fail to Allege that Defendants Breached the RCA by Soliciting Each Other or by Soliciting Collins for Employment at Lockton Re (Count I). ......................................................................... 16

      A.    Plaintiffs Fail to Allege Mr. Durant Improperly Solicited Collins. ...... 16

B.      The RCA Cannot Restrict Defendants from Leaving Guy
        Carpenter for Lockton Re ......................................................................... 18

III.    Plaintiffs Fail to Allege Defendants Violated Any Fiduciary Duty Owed
        to Plaintiffs (Count III). ........................................................................... 20

        A.      Employees' Fiduciary Duties to Employers Are Limited. .................... 20

        B.      Plaintiffs Fail to Allege that Defendants Violated Any Fiduciary
                Duty Owed to Plaintiffs ........................................................................ 21

                1.      Mr. Durant's November 2018 Trip to Dallas Did Not
                        Breach His Fiduciary Duties ........................................................ 21

                2.      Mr. Yoder's Meeting with Client A in January 2018 Did
                        Not Breach His Fiduciary Duties ................................................. 22

                3.      Plaintiffs Have Not Alleged that Mr. Gardner Breached
                        His Fiduciary Duties by Meeting with Client A in
                        February 2019 ............................................................................... 23

CONCLUSION ........................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**<u>Pages</u>**

## <u>Cases</u>

*Alexander & Alexander, Inc. v. Fritzen*,
    147 A.D.2d 241 (1st Dep't 1989) ....................................................................... 21

*Am. Broad. Cos. v. Wolf*,
    52 N.Y.2d 394 (1981) ....................................................................................... 12

*Am. Fed. Grp., Ltd. v. Rothenberg*,
    136 F.3d 897 (2d Cir. 1998) .............................................................................. 21

*Am. Fed. Grp., Ltd. v. Rothenberg*,
    2003 WL 22349673 (S.D.N.Y. Oct. 14, 2003) .................................................. 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ............................................................................... 10

*BDO Seidman v. Hirshberg*,
    93 N.Y.2d 382 (1999) ................................................................................ 11, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007). ............................................................................ 10, 11, 15

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*,
    42 N.Y.2d 496 (1977) ....................................................................................... 12

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010) .............................................................................. 11

*Elexco Land Servs., Inc. v. Hennig*,
    2012 WL 5288760 (W.D.N.Y. Oct. 23, 2012) .................................................. 12

*FTI Consulting, Inc. v. Graves*,
    2007 WL 2192200 (S.D.N.Y. July 31, 2007) .................................................... 18

*In re Document Technologies Litigation*,
    275 F. Supp. 3d 454 (S.D.N.Y. 2017) ................................................... 18, 19, 20

*Karpinski v. Ingrasci*,
    28 N.Y.2d 45 (1971) ......................................................................................... 12

iii

*Oliver Wyman, Inc. v. Eielson*,
    2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016) ................................................ 10, 11

*Oppenheimer & Co. v. Trans Energy, Inc.*,
    946 F. Supp. 2d 343 (S.D.N.Y. 2013) ...................................................................... 11

*Poller v. BioScrip, Inc.*,
    974 F. Supp. 2d 204 (S.D.N.Y. 2013) ............................................................ passim

*Primo Enters. v. Bachner*,
    148 A.D.2d 350 (1st Dep't 1989) ............................................................................. 17

*Scott Paper Co. v. Finnegan*,
    101 A.D.2d 787 (1st Dep't 1984) ............................................................................. 12

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999) ....................................................................................... 12

*Unisource Worldwide, Inc. v. Valenti*,
    196 F. Supp. 2d 269 (S.D.N.Y. 2002) ..................................................................... 12

## <u>Statutes</u>

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 10, 11

Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder (each a "Defendant" and collectively, "Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Count I as to Defendants' alleged solicitation of each other and Mr. Durant's alleged solicitation of Arthur R. Collins ("Collins"), as well as the entirety of Counts II and III of the Complaint filed by Plaintiffs Guy Carpenter & Co. ("Guy Carpenter") and Marsh & McLennan Cos. (together with Guy Carpenter, "Plaintiffs").

## PRELIMINARY STATEMENT

Defendants are three former employees of Plaintiffs who recently resigned from Guy Carpenter to join Lockton Re LLC ("Lockton Re"). On May 30, 2019, Plaintiffs filed a facially deficient Complaint (Dkt. No. 1 ("Compl.")) in which they allege that Defendants violated non-solicitation provisions of  Restrictive Covenant Agreements ("RCAs") signed by each Defendant and breached fiduciary duties owed to Guy Carpenter.[1] Specifically, Plaintiffs allege that, after joining Lockton Re, Mr. Gardner and Mr. Durant each violated the RCA by soliciting Guy Carpenter employees, including Collins, Compl. ¶¶ 109-18 (Count I), and that Mr. Durant and Mr. Yoder together violated the RCA by soliciting a Guy Carpenter client ("Client A"), *id.* ¶¶ 119-24 (Count II).  Plaintiffs also allege Defendants violated purported fiduciary duties to

---

[1] Plaintiffs also moved simultaneously for a temporary restraining order and preliminary injunction against Defendants, attaching various declarations and exhibits. Dkt. Nos. 3, 8-15.  The Court granted Plaintiffs' request for a temporary restraining order on May 30, 2019.  *See* Dkt. No. 3.  On June 4, 2019, the parties filed a joint stipulation to extend indefinitely the Court's May 30, 2019 temporary restraining order.  *See* Dkt. No. 18.

Guy Carpenter during their employment by soliciting certain Guy Carpenter employees and clients on behalf of Lockton Re, *id.* ¶¶ 125-32 (Count III), and they seek declaratory relief that the RCA provisions are valid and binding, *id.* ¶¶ 133-39.

The Complaint ignores the plain terms of the RCAs—and the strong policy of New York law that favors competition and requires anti-competitive restrictive covenants to be read narrowly. For example, with respect to Plaintiffs' allegations that Defendants improperly solicited Client A, the RCA requires that Plaintiffs allege two conditions were met to invoke its protections: (1) that Defendants had "contact" with or obtained confidential information about Client A during the last two years of their employment at Guy Carpenter; and (2) that Defendants solicited Client A by offering the ***same type of services*** provided by Defendants while they were employed by Guy Carpenter. The RCA specifically defines "contact" to mean "interaction between the Employee and the client which takes place to further the business relationship, or making … sales to or performing or providing … services or products for the client on behalf of [Guy Carpenter]." *Id.* Ex. A, at 2. Plaintiffs have not alleged facts to show these two conditions were met.

With respect to Mr. Durant, Plaintiffs have not alleged that he *ever* sold or provided *any* services to Client A while employed at Guy Carpenter. As for Mr. Yoder, Plaintiffs have not alleged that he solicited Client A by offering or providing the *same* services or products Mr. Yoder pitched to Client A while employed at Guy Carpenter. It is hardly surprising that Plaintiffs are unable to do so, because Mr. Yoder has changed job descriptions—and the types of products and services he offers to potential

clients—since his time at Guy Carpenter.[2]  And finally, with respect to Mr. Gardner, Plaintiffs have not alleged that he had *any* post-resignation contact with Client A. What is more, the RFP issued by Client A for its reinsurance placement team in *London* (which occasioned the meeting between the client, Mr. Durant, and Mr. Yoder) had no overlap with the work Guy Carpenter had previously done for this client, which was based entirely on representing the client as its designated broker in the *United States*.  The allegations of purported "solicitation" are clearly deficient on the plain terms of the RCA.

The reality is that Guy Carpenter's attempt to restrict Mr. Durant and Mr. Yoder from performing work for Client A is an attempt to stifle fair competition.  The potential business relationship with Client A is not due in any part to involvement from Defendants.  Rather, individuals associated with Lockton Re's United Kingdom affiliate, Lockton Companies LLP ("Lockton Companies"), have been independently attempting to develop Client A's international reinsurance market placement business for months in response to Client A's desire to have two reinsurance brokers representing it.  Moreover, that Guy Carpenter is losing employees since its merger with Jardine Lloyd Thompson ("JLT") as a result of widespread employee dissatisfaction

---

[2] Despite the fact that Plaintiffs have not adequately alleged that Client A is within the scope of Guy Carpenter clients that Mr. Durant and Mr. Yoder may not solicit pursuant to the RCAs, since Plaintiffs filed their Complaint in this action on May 30, 2019, Messrs. Gardner, Durant and Yoder have scrupulously avoided doing anything that could even arguably be construed as an attempt to directly or indirectly solicit or service Client A and intend to continue to refrain from doing so pending a further ruling from this Court.

with the transaction and the prospects of working for this combined organization do not alone support a claim against Defendants.

Count I as to Defendants' alleged solicitation of each other and as to the alleged solicitation of Collins by Mr. Durant, as well as the entirety of Counts II and III of Plaintiffs' Complaint are likewise facially deficient and fail to state a claim upon which relief can be granted. Plaintiffs contend in Count I, *inter alia*, that Defendants breached their RCAs by soliciting each other, and that Mr. Durant breached his RCA by soliciting another Guy Carpenter employee, Arthur R. Collins. But the Complaint does not allege that Mr. Durant had any confidential information about Collins gleaned from his employment with Guy Carpenter, and New York law bars Plaintiffs' cross-solicitation claim. Count II fails because, as discussed above, Plaintiffs have not alleged that Defendants improperly solicited Client A. Finally, Plaintiffs have not alleged that Defendants breached their fiduciary duties during the final months of their employment: the only factual allegations in the Complaint describe instances of Defendants fulfilling their job responsibilities to Guy Carpenter and cannot support an inference of untoward behavior.

Accordingly, Defendants' partial Motion to Dismiss should be granted.

## **BACKGROUND**

The Complaint contains the following allegations relevant to this Motion:[3]

---

[3] Defendants acknowledge, as they must, that the Court must accept as true the factual allegations in the Complaint for purposes of this motion. Defendants do not concede the truth of any of these allegations.

## I.   Defendants' Employment with Guy Carpenter.

Defendants were each previously at-will employees of Plaintiffs, or related entities, in various capacities.  Compl. ¶¶ 23-25.  Mr. Gardner worked for Plaintiffs for 26 years, eventually becoming Guy Carpenter's CEO of North America Operations, which involved servicing and maintaining relationships with certain Guy Carpenter clients.  *Id.* ¶¶ 23, 27.  Mr. Durant worked for Plaintiffs for 23 years, eventually becoming Guy Carpenter's Head of Sales and Segments, which involved managing Guy Carpenter's Sales division and working on investment and growth strategies for certain Guy Carpenter business segments.  *Id.* ¶¶ 24, 28.  Mr. Yoder began working for Guy Carpenter on September 19, 2017 as Chief Innovation and Product Development Officer, which involved overseeing the development of GC Genesis and GC Logic, actuarial technological tools belonging to Guy Carpenter.  *Id.* ¶¶ 25, 29-31.

In the course of their employment with Guy Carpenter, Defendants each signed an identical RCA.  *Id.* ¶ 40; *see also id.* Ex. A, at 1 (This [RCA] is a legal agreement between you (the "Employee") and [MMC] … and its affiliates and subsidiaries….").[4]  As relevant here, each RCA states that, upon ending their employment with Guy Carpenter, Defendants shall not, for a period of 12 months after resigning,

> (i) solicit clients of [Guy Carpenter] for the purpose of selling or providing products or services ***of the type sold or provided by [Defendants]*** while employed by [Guy Carpenter]; or (ii) induce clients or prospective clients of [Guy Carpenter] to terminate, cancel, not renew, or not place

---

[4] Mr. Durant and Mr. Yoder are also alleged to have signed separate, substantively identical Non-Solicitation Agreements.  *Id.* ¶¶ 49-55.  The terms of these agreements are functionally identical to the terms of the RCAs.  *Compare id.* ¶¶ 41-42, *with* ¶¶ 51-52.

> business with [Guy Carpenter]; or (iii) perform or supervise
> the performance of services or provision of products *of the
> type sold or provided by [Defendants] while [Defend-
> ants were] employed by [Guy Carpenter]* on behalf of
> any clients or prospective clients of [Guy Carpenter]; or
> (iv) assist others to do the acts specified [above].

*Id.* Ex. A, at 2.

The RCA states this restriction applies only to "clients or prospective clients of [Guy Carpenter] with which [Defendants] had contact with or about which [Defendants] obtained Confidential Information or trade secrets during the last two (2) years of [their] employment with [Guy Carpenter]," and defines "contact" as:

> [I]nteraction between the Employee and the client which
> takes place to further the business relationship, or making
> (or assisting or supervising the making of) sales to or per-
> forming or providing (or assisting or supervising the per-
> formance or provision of) services or products for the client
> on behalf of [Guy Carpenter].

*Id.*

The RCA also states that it places limited restrictions on the solicitation of Guy Carpenter employees, requiring that, during their employment and for 12 months thereafter, Defendants not

> directly or indirectly, solicit, or endeavor to cause any em-
> ployee of [Guy Carpenter] with whom [Defendants], *dur-
> ing the last two (2) years of [their] employment with
> [Guy Carpenter], came into contact for the purpose of
> soliciting or servicing business* or about whom [Defend-
> ants] obtained Confidential Information to leave employ-
> ment with [Guy Carpenter].

*Id.* The RCA states "Confidential Information is not generally known or available to the general public, but had been developed, compiled or acquired by [Guy Carpenter] at its effort and expense." *Id.* at 3.

## II. Defendants Continue to Fulfill Their Employment Responsibilities for Guy Carpenter.

On July 11, 2018, Mr. Durant, who was "responsible for, among other things, monitoring the sales performance of Guy Carpenter's offices and its individual managers and brokers," Compl. ¶ 28, met in New York with Michael Jameson ("Jameson"), the Branch Manager for Guy Carpenter's Dallas, Texas office, to discuss Guy Carpenter client prospects. *Id.* ¶¶ 77, 79. Mr. Durant met with Jameson again in Dallas on November 26, 2018 "to discuss significant Guy Carpenter prospects" and to "me[e]t with Jameson's entire team." *Id.* ¶ 80. Plaintiffs do not allege *any* facts to support any inference that Mr. Durant did anything other than carry out his job responsibilities to Guy Carpenter during those meetings.

In late January 2019, Mr. Yoder, whose position at Guy Carpenter made him "responsible for … GC Genesis," *id.* ¶ 29, met with the CEO of "a longtime, substantial Guy Carpenter client" (whom Plaintiffs refer to as "Client A," *see* ECF No. 13 ("Dew Decl.")) at an industry conference in Naples, Florida, where Mr. Yoder was presenting on GC Genesis and InsurTech—a partnership of companies that use technological innovations to create efficiencies or other improvements in the insurance industry. Compl. ¶ 89. Plaintiffs allege that, in January 2019, Mr. Yoder "presumably … had already decided to join Lockton." *Id.* But this meeting was arranged by Hartwell Dew, Client A's contact at Guy Carpenter, at the request of the CEO of

7

Client A.  Dew Decl. ¶ 16.  The purpose of the meeting was "specifically to discuss Guy Carpenter's GC Genesis program, and how it could benefit Client A." *Id.* ¶ 16. Plaintiffs do not allege *any* facts to support any inference that Mr. Yoder did anything other than carry out his job responsibilities to Guy Carpenter during that meeting.

In late February 2019, Mr. Gardner, Jameson's direct supervisor, met with Jameson to discuss Jameson's and his team's annual compensation.  Compl. ¶ 78. Plaintiffs do not allege *any* facts to support any inference that Mr. Gardner did anything other than carry out his job responsibilities to Guy Carpenter during that meeting.

On February 28, 2019, Mr. Gardner, who was responsible for "strengthening and maintaining Guy Carpenter's relationships with many of its largest and most important clients," *id.* ¶ 27, met with the CEO of Client A.  *Id.* ¶ 89.  Plaintiffs allege that "presumably" the purpose this meeting was to "lay[] the groundwork for [an] improper solicitation" of Client A by Mr. Gardner when he joined Lockton Re.  *Id.*  In fact, the day before Mr. Gardner met with the CEO of Client A, Client A had already informed Dew that it "was going to be putting a portion of its international reinsurance placement out for a Request for Proposal ('RFP'), and the CEO asked that Guy Carpenter submit an RFP for this work."  Dew Decl. ¶ 5.  *Dew was present for the meeting* between Mr. Gardner and the CEO of Client A on February 28, 2019.  *Id.* ¶ 6. Dew was "pleased to have [Mr. Gardner] at this meeting, particularly given Client A's decision to issue an RFP for the portion of its international reinsurance placement."  *Id.*  Plaintiffs do not allege *any* facts to support any inference that Mr.

8

Gardner did anything other than carry out his job responsibilities to Guy Carpenter during that meeting.

These allegations merely demonstrate that Defendants continued to fulfill their roles until they resigned from their positions at Guy Carpenter.

### III.   Defendants Resign from Guy Carpenter.

On March 7, 2019, Defendants provided 60-day notice to Guy Carpenter of their intentions to resign and join Lockton Re's reinsurance business.  Compl. ¶ 4. On May 7, 2019, Defendants' resignations from Guy Carpenter became effective, and they began working for Lockton Re.  *See id.* ¶ 76.

### IV.   Mr. Durant Calls Arthur R. Collins After Joining Lockton Re.

On May 16, 2019, Arthur R. Collins, a current Guy Carpenter broker and Managing Director, received two missed calls from a phone number allegedly belonging to Mr. Durant.  *Id.* ¶ 85.  On May 21, 2019, Mr. Durant spoke with Collins on the phone for 26 minutes.  *Id.*  Durant allegedly explained to Collins "why he had chosen to join Lockton and why he believed others should make the same choice," and he allegedly told Collins "Lockton was determined to recruit already-successful brokers."  *Id.* ¶ 87.

### V.   Mr. Durant and Mr. Yoder Meet with Client A After Joining Lockton Re.

On May 23, 2019, after they had begun working for Lockton Re, Mr. Durant and Mr. Yoder attended a meeting with two representatives of Lockton Re's UK affiliate and Client A, "seeking to land a large portion of [Client A's] international book of business."  *Id.* ¶ 89.  Mr. Gardner is not alleged to have had any involvement in this meeting.  *See id.*

9

This meeting had *nothing* to do with Mr. Yoder's responsibilities with GC Genesis, InsurTech, or GC Logic.  Moreover, this meeting was not to discuss anything involving Client A's designated U.S. placement broker—it focused solely on appointing Client A's reinsurance placement team outside the United States—business that Guy Carpenter never had, and business that neither Mr. Durant nor Mr. Yoder had worked on with Client A previously.  Rather, this was business that representatives of Lockton Re's affiliates had been developing for months, wholly independent of the three Defendants here.  Although ultimately Mr. Yoder and Mr. Durant met with Client A—along with others—the portion of the reinsurance placement addressed at this meeting had no overlap with the work Guy Carpenter had previously done for this client.

## STANDARD OF REVIEW

"To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must 'provide the grounds upon which [the] claim rests.'"  *Oliver Wyman, Inc. v. Eielson*, 2016 WL 5339549, at *5 (S.D.N.Y. Sept. 22, 2016) (Sullivan, J.) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must accept as true only a complaint's factual allegations, not legal conclusions.  *Oliver Wyman*, 2016 WL 5339549, at *5.  "[A] pleading that offers only 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider [only] the facts alleged in the complaint, documents attached to the complaint as exhibits,[] documents incorporated by reference in the complaint," and documents "integral" to the complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

## **ARGUMENT**

## I. **Plaintiffs Fail to Allege Defendants Violated the Restrictive Covenant Not to Solicit Plaintiffs' Clients (Count II).**

Plaintiffs allege Defendants violated the RCA provision restricting the solicitation of certain Guy Carpenter clients solely because Mr. Durant and Mr. Yoder, along with two other Lockton affiliates, met with Client A on May 23, 2019. Compl. ¶¶ 119-24. This single meeting is insufficient to state a claim for beach of the client non-solicitation provision of the RCA, and thus Count II of the Complaint should be dismissed. *See Oliver Wyman*, 2016 WL 5339549, at *5 ("Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." (quoting *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 347 (S.D.N.Y. 2013))).

### A. **Restrictive Covenant Are Construed Narrowly.**

Covenants not to compete and restrictive covenants are narrowly construed by New York courts. *See, e.g.*, *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999) (restrictive covenants enforceable only to extent required for the protection of legitimate interest of the employer); *see also Columbia Ribbon & Carbon Mfg. Co. v. A-1-*

*A Corp.*, 42 N.Y.2d 496, 499 (1977); *Scott Paper Co. v. Finnegan*, 101 A.D.2d 787, 789 (1st Dep't 1984) (quoting *Am. Broad. Cos. v. Wolf*, 52 N.Y.2d 394, 404 (1981)).  Indeed, "powerful considerations of public policy militate against sanctioning the loss of a [person's] livelihood."  *Elexco Land Servs., Inc. v. Hennig*, 2012 WL 5288760, at *2 (W.D.N.Y. Oct. 23, 2012) (quoting *Karpinski v. Ingrasci*, 28 N.Y.2d 45, 49 (1971)).

Thus, New York law permits restrictive covenant agreements only if they are reasonable.  *Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 276 (S.D.N.Y. 2002).[5]  In deciding whether to enforce a restrictive covenant agreement, the "courts must weigh the need to protect the employer's legitimate business interests against the employee's concern regarding the possible loss of livelihood, a result strongly disfavored by public policy in New York."  *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999).  The law counsels against reading a restrictive covenant so broadly as to impinge upon "the vital employee interests associated with establishing a livelihood."  *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 221 (S.D.N.Y. 2013).

### B.   Plaintiffs Fail to Allege A Violation of the RCA Provision Against Soliciting Guy Carpenter Clients.

To allege a violation of the client-solicitation restriction of the RCA, under the RCA's own terms, Plaintiffs must allege that: (1) Client A is a client whom the Defendant may not solicit because that Defendant, "while employed by [Guy Carpenter]," "had contact" with Client A or "obtained Confidential Information or trade secrets" about Client A "during the last two (2) years of [his] employment with [Guy

---

[5] The RCA in this case is governed by New York law.  Compl. Ex A, at 6.

Carpenter]"; and (2) the Defendant nevertheless directly or indirectly "solicit[ed]" Client A "for the purpose of selling or providing [those same] products or services"; "induce[d]" Client A "to terminate, cancel, not renew, or not place business with [Guy Carpenter]"; "perform[ed] or supervise[d] the performance of [those same] services or provision of [those same] products" for Client A; or aided and abetted others to so "solicit," "induce," "perform … services," or "supervise the performance of services." *See* Compl. Ex. A, at 2. Contact is defined as "interaction between the Employee and the client which takes place to further the business relationship, or making … sales to or performing or providing … services or products for the client on behalf of [Guy Carpenter]." *Id.* Plaintiffs have not alleged that any Defendant meets both of these requirements.

### 1. Plaintiffs Have Not Alleged that Mr. Durant Breached the RCA by Soliciting Client A.

Plaintiffs' paltry allegations regarding Mr. Durant's purported solicitation of Client A do not pass muster. Plaintiffs do not even *attempt* to allege that Client A was a client Mr. Durant was prohibited from soliciting. Plaintiffs do not allege Mr. Durant "sold or provided" "products or services" to Client A "while employed by [Guy Carpenter]," or that Mr. Durant had "contact" with Client A in the last two years of his employment with Guy Carpenter, or allege that Mr. Durant obtained Confidential Information about Client A during the last two years of his employment with Guy Carpenter. *See id.*; *see also id.* ¶ 121. Plaintiffs fail completely to allege *any* link between Client A and Mr. Durant. Thus, under the terms of the RCA, Mr. Durant is

not restricted from pursuing Client A in his capacity as a Lockton Re employee, and Plaintiffs' allegations in Count II with respect to Mr. Durant must be dismissed.

### 2. Plaintiffs Have Not Alleged that Mr. Yoder Breached the RCA by Soliciting Client A.

With respect to Mr. Yoder, Plaintiffs allege only that Mr. Yoder had a meeting with Client A on May 23, 2019 to "land a large portion of that client's international book of business." Compl. ¶ 89. But crucially, Plaintiffs do *not* allege that this meeting was an improper solicitation under the terms of the RCA: namely, Plaintiffs do not allege that this meeting was for the purpose of providing the same services or products Mr. Yoder provided or pitched to Client A while he was employed by Guy Carpenter.

Indeed, when Client A requested to speak with Mr. Yoder in January 2019 at a conference in which Mr. Yoder, in his capacity as a Guy Carpenter employee, "was presenting on GC Genesis and InsurTech-related issues," *id.*, it was "to discuss Guy Carpenter's GC Genesis program, and how it could benefit Client A," Dew Decl. ¶ 16. GC Genesis was thus the "service or product" Mr. Yoder provided or pitched to Client A while he worked at Guy Carpenter, within the meaning of the RCA. *See id.* Ex. A, at 2. The Complaint alleges the purpose of the May 23, 2019 meeting Mr. Yoder and Mr. Durant had with Client A had *nothing* to do with GC Genesis or InsurTech. Instead, Plaintiffs' Complaint speculates that the purpose of the May 23 meeting with Client A was to pitch for "a large portion of [Client A's] international book of business." *Id.* ¶ 89. Taken as true, this meeting had nothing to do with the services or products Mr. Yoder provided during his employment with Guy Carpenter, namely GC

14

Genesis or InsurTech.  Mr. Yoder has changed job descriptions entirely since resigning from Guy Carpenter:  He no longer provides insurance technology consultancy services, which involved pairing cutting-edge technology companies with insurance carriers, as he did as head of GC Genesis.  For Lockton Re, Mr. Yoder is head of data analytics for a standard, reinsurance brokerage business.  Thus, Mr. Yoder simply was not prohibited from engaging Client A in such a discussion, as that discussion is not alleged to have involved a pitch regarding GC Genesis, InsurTech, or any other product or service that competes with GC Genesis or InsurTech.  Accordingly, Plaintiffs' allegations in Count II with respect to Mr. Yoder must be dismissed.

### 3.    Plaintiffs' Have Not Alleged that Mr. Gardner Breached the RCA by Soliciting Client A.

Finally, with respect to Mr. Gardner, Plaintiffs have not alleged he had any contact—direct or indirect—with Client A *after* he left Guy Carpenter and joined Lockton Re.  The last time Plaintiffs allege that Mr. Gardner had any contact with Client A was on February 28, 2019, while Mr. Gardner was working for Guy Carpenter.  *See id.* ¶ 89.  Plaintiffs "presum[e]" that Mr. Gardner's February 28, 2019 meeting with Client A somehow "la[id] the groundwork" for an eventual "improper solicitation" by Lockton Re, but they fail to allege any facts to support such speculation.  *See id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  To the contrary, Plaintiffs have submitted a declaration by Dew, who admits he was "pleased" by Mr. Gardner's presence at the February 28, 2019 meeting with Client A and offers no indication whatsoever that at this meeting Mr. Gardner was soliciting Client A's business on behalf

15

of Lockton Re rather than Guy Carpenter.  Dew Decl. ¶ 6.  Absent any indication that Mr. Gardner contacted, much less solicited, Client A, Count II must be dismissed as to him.

## II.   Plaintiffs Fail to Allege that Defendants Breached the RCA by Soliciting Each Other or by Soliciting Collins for Employment at Lockton Re (Count I).

Plaintiffs claim that Defendants violated the RCA provision restricting the solicitation of certain Guy Carpenter employees by soliciting each other to work at Lockton Re while they worked for Guy Carpenter, and that Mr. Durant violated the same RCA provision by soliciting Arthur R. Collins to join Lockton Re after Mr. Durant resigned from Guy Carpenter.  Compl. ¶¶ 85-89, 109-111, 113-18.  Both claims fail.

### A.   Plaintiffs Fail to Allege Mr. Durant Improperly Solicited Collins.

The Complaint does not establish that Mr. Durant was restricted from allegedly soliciting Collins to join Lockton Re after Mr. Durant had left Guy Carpenter.

Again, by its own terms, the RCA restricts Mr. Durant from soliciting only Guy Carpenter employees "with whom [he], during the last two (2) years of [his] employment with [Guy Carpenter], came into contact for the purpose of soliciting or servicing business or about whom [he] obtained Confidential Information."  *Id.* Ex. A, at 2. Plaintiffs have not adequately alleged Collins meets that description as to Mr. Durant.

Plaintiffs have not adequately alleged that Mr. Durant came into sufficient "contact" with Collins during the last two years of Mr. Durant's employment with Guy Carpenter.  The *sole* "contact" that Plaintiffs allege occurred between Mr. Durant

and Collins is "a captive insurance industry event in Vermont while they were Captives specialists at Marsh [Mr. Durant] and Guy Carpenter [Collins]." *Id.* ¶ 86. Plaintiffs conspicuously omit the date of this event from the Complaint, *see id.*, but a declaration signed by Collins that Plaintiffs filed in connection with their motion for a preliminary injunction clarifies that this alleged interaction between Mr. Durant and Collins occurred "during the summer of 2016," which is more than two years before Mr. Durant's resignation from Guy Carpenter on May 7, 2019. Collins Decl., ECF No. 12 ¶ 6. Mr. Durant simply was not restricted from soliciting Collins on the basis of "contact" outside the last two years of Mr. Durant's employment.

Neither do Plaintiffs adequately allege Mr. Durant obtained Confidential Information about Collins during the last two years of Mr. Durant's employment with Guy Carpenter. Plaintiffs allege that Mr. Durant was "aware of Collins' role as head of Guy Carpenter's 'Captives' practice," Collins' "substantial experience at Guy Carpenter," and "Collins' notable portfolio of clients in the 'Property and Casualty' insurance space." Compl. ¶ 86. And Plaintiffs allege that Mr. Durant was "familiar with the Captives space." *Id.* But Plaintiffs do not allege Mr. Durant's knowledge of "the Captives space" or of Collins' position at Guy Carpenter resulted in Mr. Durant possessing any type of legally protectable Confidential Information about Collins sufficient to trigger the RCA's prohibition against his soliciting Collins for employment at Lockton Re. *See Primo Enters. v. Bachner*, 148 A.D.2d 350, 351 (1st Dep't 1989) ("Manifestly, an employer can have no legitimate interest in restricting the use of

easily accessible information.  Nor would it be a purposeful exercise for courts to pre-

vent the use by one individual of information readily available to all.").[6]

### B.    The RCA Cannot Restrict Defendants from Leaving Guy Carpenter for Lockton Re.

Courts apply a three-pronged reasonableness test to assess whether an RCA

provision is enforceable against employees.  *BDO Seidman*, 93 N.Y.2d at 388.  Under

this test, "[a] restraint is reasonable only if it: (1) is *no greater* than is required for

the protection of the *legitimate interest* of the employer, (2) does not impose undue

hardship on the employee, and (3) is not injurious to the public."  *Id.* at 388-89.  "The

violation of any prong renders the covenant invalid."  *FTI Consulting, Inc. v. Graves*,

2007 WL 2192200, at *5 (S.D.N.Y. July 31, 2007) (emphasis added).

This case is on all fours with *In re Document Technologies Litigation*, 275 F.

Supp. 3d 454 (S.D.N.Y. 2017).  There, Judge Rakoff applied the three-pronged rea-

sonableness test to claims that former employees of an electronic discovery services

provider had violated their restrictive covenants, and concluded that a restrictive cov-

enant is unenforceable under New York law "insofar as it purports to prohibit at-will

employees, who have yet to accept an offer of new employment, from 'inducing' or

even 'encouraging' their coworkers to leave their present employer."  *Id.* at 466.  If an

employer "desires to prevent its employees from coordinating their resignations, it is

free to hire them pursuant to term employment agreements."  *Id.* at 467.  But it is

---

[6] The Complaint also states Mr. Gardner had prior experience with Collins, but Plain-
tiffs do not allege Mr. Gardner had any involvement in Mr. Durant's phone calls to
Collins in May 2019 or that Mr. Gardner solicited Collins to join Lockton Re in any
other fashion.  *See* Compl. ¶ 86.

not "proper" for an employer to "use restrictive covenants to supply itself all the benefits of term agreements while simultaneously retaining the right to lay off its personnel whenever it so desires." *Id.*

Judge Rakoff further explained that, as here, the RCA in *Document Technologies* purported to impose an undue hardship on employees because it amounted to an improper "contractual gag rule on employee complaints." *Id.* at 468; *cf.* 464 (restrictive covenant stated, "for 12 months after termination [Employee] will not 'compete against [Employer] …, or engage in employment with or provide independent contractor or consulting services for any … entity which … compete[s] against [Employer]'"); Compl. Ex. A, at 2 (restricting Guy Carpenter employees from "[d]irectly or indirectly, solicit[ing], or endeavor[ing] to cause any [applicable] employee of [Guy Carpenter] … to leave employment with [Guy Carpenter]"). Accordingly, Judge Rakoff concluded that employees could not be found in violation of their restrictive covenant agreements not to solicit employees simply by jointly meeting with a competitor employer and offering themselves as a "package deal." *Document Techs.*, 275 F. Supp. 3d at 467.

The Complaint in this case is weaker than the *Document Technologies* complaint in its attempt to state claims for violations of the RCA based on Defendants' alleged solicitation of each other. Defendants are not alleged to have jointly met with Lockton Re about future employment opportunities or to have pitched themselves to Lockton Re as a "package deal.'" *Id.* at 467. Plaintiffs merely allege Defendants spoke on the phone or in person on three occasions, sent a limited number of text messages

and emails to each other (that Plaintiffs assume in a conclusory manner reflected unidentified Lockton Re-related discussions), and resigned on the same day.  Compl. ¶¶ 63-68, 72-74.  Under *Document Technologies*, the RCA cannot be enforced to prohibit such conduct.

### III.   Plaintiffs Fail to Allege Defendants Violated Any Fiduciary Duty Owed to Plaintiffs (Count III).

Plaintiffs allege Defendants violated their fiduciary duties to Guy Carpenter when (1) Mr. Durant met with Jameson in Dallas on November 26, 2018; (2) Mr. Yoder met with Client A's CEO in Naples, Florida in January 2019; and (3) Mr. Gardner met with Dew and Client A's CEO on February 28, 2019.  Compl. ¶¶ 128-29. These allegations demonstrate nothing more than Defendants performing their job duties for Guy Carpenter while they were employed by Guy Carpenter.  The Complaint is devoid of any allegation that Defendants violated their fiduciary duties.

#### A.    Employees' Fiduciary Duties to Employers Are Limited.

To establish a breach of fiduciary duty, including the duty of loyalty, the plaintiff must allege that the "fiduciary commit[ed] an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, misuse of confidential information, solicit[ed] ... [the] employer's customers before cessation of employment, conspire[ed] to bring about mass resignation of an employer's key employees, or usurp[ed] … the employer's business opportunity."  *Poller*, 974 F. Supp. 2d at 227.  An employee's fiduciary duties generally cease when the employee is no longer working for the

former employer. *See id.* (citing *Am. Fed. Grp., Ltd. v. Rothenberg*, 2003 WL 22349673, at *13 (S.D.N.Y. Oct. 14, 2003)).[7]

### B. Plaintiffs Fail to Allege that Defendants Violated Any Fiduciary Duty Owed to Plaintiffs.

The Complaint lacks any factual allegations to support the inference that Defendants engaged in such unfair, fraudulent, or wrongful conduct as to violate any fiduciary duty to Guy Carpenter.

#### 1. Mr. Durant's November 2018 Trip to Dallas Did Not Breach His Fiduciary Duties.

Plaintiffs' sole allegation against Mr. Durant in Count III is that he breached his fiduciary duties by traveling to Dallas in November of 2018 to meet with Jameson. Compl. ¶ 128. But there was nothing untoward about Mr. Durant's trip to Guy Carpenter's Dallas office, because it was within Mr. Durant's responsibilities as Head of Sales to check in on the status of Guy Carpenter's sales branches. *See id.* ¶ 27. Plaintiffs do not allege Mr. Durant undermined Guy Carpenter's business, or that Mr. Durant committed fraud, during this trip. Plaintiffs surmise instead that Mr. Durant

---

[7] To the extent former employees owe their prior employer fiduciary duties, it is only the duty not to misappropriate the former employer's confidential information and "not to divert business in which a former employer has the requisite 'tangible expectancy.'" *Id.* at 227-28 (quoting *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 914 (2d Cir. 1998)). Plaintiffs do not allege Defendants violated their fiduciary duties after they left Guy Carpenter. In any event, Plaintiffs do not allege Defendants misappropriated any confidential information, and Plaintiffs have no "tangible expectancy" in Client A's international reinsurance market placement business, as such business is currently subject to an RFP application process. *See Am. Fed. Grp.*, 136 F.3d at 906 ("tangible expectancy" is "something much less tenable than ownership, but, on the other hand, more certain than a desire or a hope" (quoting *Alexander & Alexander, Inc. v. Fritzen*, 147 A.D.2d 241, 247-48 (1st Dep't 1989))).

21

had access to confidential information during his one-day trip to Guy Carpenter's Dallas office. *See id.* ¶ 80. But again, access to such information was consistent with Mr. Durant's duties as Head of Sales, and Plaintiffs do not allege Mr. Durant misused that information. Plaintiffs' breach of fiduciary duty claim as to Mr. Durant relies entirely on the allegation that Mr. Durant's November 28, 2018 trip to Dallas was his first trip to that branch, and it happened to occur "at the very same time as he, Gardner and Yoder were planning their defection to Lockton." *Id.* ¶ 128. But the law is clear that "an employee is not prohibited from making arrangements or preparations to compete with his principal before terminating his agency, provided he does not act unfairly or injure his principal." *Poller*, 974 F. Supp. 2d at 227. Here, Plaintiffs have failed to allege any facts to show that Mr. Durant's Dallas trip was unfair or injured Guy Carpenter.

### 2. Mr. Yoder's Meeting with Client A in January 2018 Did Not Breach His Fiduciary Duties.

The same is true of Mr. Yoder's conversation with Client A's CEO in January 2019. This was a brief conversation Mr. Yoder had at a conference during which Mr. Yoder spoke about technology to a large audience. Plaintiffs do not allege Mr. Yoder undermined Guy Carpenter in this conversation with Client A, nor that he misappropriated confidential information in this conversation. Yet again, Plaintiffs' claim relies entirely on the timing of the meeting: they suggest it is suspicious that Mr. Yoder's conversation with Client A's CEO occurred so close to the date of Mr. Yoder's resignation from Guy Carpenter and close to the date of Mr. Gardner's February 28, 2019 conversation with Client A's CEO. *See* Compl. ¶ 129. But they allege *no facts*

22

from which the Court could infer that Mr. Yoder committed fraud or treated Guy Carpenter unfairly by meeting with Client A's CEO *at the request* of a Guy Carpenter colleague.  Plaintiffs must allege facts from which the Court can plausibly infer a breach of Mr. Yoder's fiduciary obligations, and their failure to do so is fatal to Plaintiffs' breach of fiduciary claim as to Mr. Yoder.  *See Poller*, 974 F. Supp. 2d at 227.

### 3.   Plaintiffs Have Not Alleged that Mr. Gardner Breached His Fiduciary Duties by Meeting with Client A in February 2019.

Finally, Plaintiffs' claim as to Mr. Gardner suffers from the same deficiency: Plaintiffs rely solely on the timing of Mr. Gardner's February 28, 2019 meeting with Client A's CEO, shortly before he resigned from Guy Carpenter, and contend that this fact *alone* is sufficient to support a breach of fiduciary duty claim.  *See* Compl. ¶ 129. That is wrong.  *See Poller*, 974 F. Supp. 2d at 227.  Mr. Gardner met with Client A's CEO to assist Guy Carpenter's efforts in the RFP for Client A's international reinsurance market placement business; there is no allegation in the Complaint that Mr. Gardner mentioned Lockton Re in that meeting or otherwise undermined Guy Carpenter.  If Mr. Gardner had acted to harm Guy Carpenter in this meeting with Client A's CEO, Dew, a current Guy Carpenter employee who was also present at the meeting, would be able to attest to such conduct.  But Dew reports he was "pleased" by Mr. Gardner's presence at the meeting with Client A's CEO.  Dew Decl. ¶ 6.  Plaintiffs have not alleged Mr. Gardner breached his fiduciary duties by advocating for Guy Carpenter before Client A.

23

## **CONCLUSION**

Defendants respectfully request the Court dismiss with prejudice Count I as to Defendants' alleged solicitation of each other and Mr. Durant's alleged solicitation of Collins, as well as the entirety of Counts II and III of the Complaint.

Dated:  June 5, 2019
       New York, NY

Respectfully submitted,

SELENDY & GAY PLLC

By:  */s/ David Elsberg*
    David Elsberg
    Joshua S. Margolin
    Ryan W. Allison
    SELENDY & GAY, PLLC
    1290 Avenue of the Americas
    New York, NY  10104
    Telephone: 212-390-9000
    E-mail: delsberg@selendygay.com
          jmargolin@selendygay.com
          rallison@selendygay.com

*Attorneys for Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder*