**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUY CARPENTER & CO. and MARSH & MCLENNAN COS.,

                Plaintiffs,

        v.

TIMOTHY GARDNER, NICHOLAS DURANT, and CLAUDE YODER,

                Defendants.

Case No. 19-cv-5062 (PAE)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

Date:  July 17, 2019

David Elsberg
Joshua S. Margolin
Ryan W. Allison
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY  10104
Telephone: 212-390-9000
E-mail: delsberg@selendygay.com
      jmargolin@selendygay.com
      rallison@selendygay.com

*Attorneys for Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder*

## TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................4

I.      Defendants' Employment with Guy Carpenter.................................................................4

II.     Defendants Fulfill Their Employment Responsibilities for Guy Carpenter. ......................6

III.    Defendants Resign from Guy Carpenter...........................................................................8

IV.     Mr. Durant Calls Arthur R. Collins After Joining Lockton Re. .........................................8

V.      Mr. Durant and Mr. Yoder Meet with Client A After Joining Lockton Re. ........................9

STANDARD OF REVIEW ........................................................................................................9

ARGUMENT ..........................................................................................................................10

I.      Plaintiffs Fail to Allege Defendants Violated Any Fiduciary Duty (Count III). ...............10

        A.      Employees' Fiduciary Duties to Employers Are Limited....................................10

        B.      Plaintiffs Fail to Allege that Defendants Violated Any Fiduciary Duty
                Owed to Plaintiffs. ..........................................................................................11

                1.      Mr. Durant's November 2018 Trip to Dallas Did Not Breach His
                        Fiduciary Duties...................................................................................11

                2.      Mr. Yoder's Conversation with Client A in January 2019 Did Not
                        Breach His Fiduciary Duties..................................................................12

                3.      Plaintiffs Have Not Alleged that Mr. Gardner Breached His
                        Fiduciary Duties by Meeting with Client A in February 2019. ...............12

II.     Plaintiffs Fail to Allege Defendants Violated the Restrictive Covenant Not to
        Solicit Plaintiffs' Clients (Count II)................................................................................13

        A.      Restrictive Covenant Agreements Are Construed Narrowly...............................13

        B.      The RCAs Cannot Be Enforced to Restrict Defendants From Soliciting
                Client A or Other Prospective Clients of Guy Carpenter's..................................14

                1.      Plaintiffs Do Not Allege Interference with an Existing Protected
                        Client Relationship...............................................................................15

2.      Plaintiffs Have Not Alleged that Mr. Durant Breached the RCA by Soliciting Client A. ................................................................................17

3.      Plaintiffs Have Not Alleged that Mr. Yoder Breached the RCA by Soliciting Client A. ................................................................................18

4.      Plaintiffs Have Not Alleged that Mr. Gardner Breached the RCA by Soliciting Client A. ...........................................................................20

III.    Plaintiffs Fail to Allege that Defendants Breached the RCAs by Soliciting Each Other or by Soliciting Collins (Count I). ............................................................21

        A.      The RCAs Cannot Restrict Defendants from Leaving Guy Carpenter for Lockton Re.................................................................................................21

        B.      Plaintiffs Fail to Allege Mr. Durant Improperly Solicited Collins. ......................23

        CONCLUSION........................................................................................................25

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Alexander & Alexander, Inc. v. Fritzen*,
    147 A.D.2d 241 (1st Dep't 1989) .................................................................................... 11

*Am. Broad. Cos. v. Wolf*,
    52 N.Y.2d 394 (1981) ................................................................................................... 14

*Am. Fed. Grp., Ltd. v. Rothenberg*,
    136 F.3d 897 (2d Cir. 1998)................................................................................... 10, 11

*Am. Fed. Grp., Ltd. v. Rothenberg*,
    2003 WL 22349673 (S.D.N.Y. Oct. 14, 2003) ............................................................ 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................... 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)............................................................................................ 9

*BDO Seidman v. Hirshberg*,
    93 N.Y.2d 382 (1999) ..................................................................................... 13, 21, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................ 9, 21

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*,
    42 N.Y.2d 496 (1977) ................................................................................................. 14

*Elexco Land Servs., Inc. v. Hennig*,
    2012 WL 5288760 (W.D.N.Y. Oct. 23, 2012) ............................................................ 14

*FTI Consulting, Inc. v. Graves*,
    2007 WL 2192200 (S.D.N.Y. July 31, 2007) .............................................................. 22

*In re Document Techs. Litig.*,
    275 F. Supp. 3d 454 (S.D.N.Y. 2017).................................................................... 22, 23

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)......................................................................... 16

*Karpinski v. Ingrasci*,
    28 N.Y.2d 45 (1971) ................................................................................................... 14

*Marsh USA Inc. v. Karasaki*,
    2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) .............................................................. 16

*Marsh USA Inc. v. Schuhriemen*,
    183 F. Supp. 3d 529 (S.D.N.Y. 2016)............................................................. 15

*Mercer Health & Benefits LLC v. DiGregorio*,
    307 F. Supp. 3d 326 (S.D.N.Y. 2018)....................................................... 15, 16

*Oliver Wyman, Inc. v. Eielson*,
    2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016)....................................... 9, 10, 13

*Oppenheimer & Co. v. Trans Energy, Inc.*,
    946 F. Supp. 2d 343 (S.D.N.Y. 2013)............................................................. 13

*Poller v. BioScrip, Inc.*,
    974 F. Supp. 2d 204 (S.D.N.Y. 2013)..................................................... passim

*Primo Enters. v. Bachner*,
    148 A.D.2d 350 (1st Dep't 1989) .................................................................. 25

*Scott Paper Co. v. Finnegan*,
    101 A.D.2d 787 (1st Dep't 1984) .................................................................. 14

*Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina*,
    9 A.D.3d 805 (3d Dep't 2004) ...................................................................... 18

*Stephenson v. PricewaterhouseCoopers, LLP*,
    768 F. Supp. 2d 562 (S.D.N.Y. 2011)............................................................ 17

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999)............................................................................. 14

*Unisource Worldwide, Inc. v. Valenti*,
    196 F. Supp. 2d 269 (S.D.N.Y. 2002)............................................................ 14

Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder ("Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Count I as to Defendants' alleged solicitation of each other and Mr. Durant's alleged solicitation of Arthur R. Collins ("Collins"), as well as the entirety of Counts II and III of the Amended Complaint filed by Plaintiffs Guy Carpenter & Co. ("Guy Carpenter") and Marsh & McLennan Cos. (together with Guy Carpenter, "Plaintiffs").

## PRELIMINARY STATEMENT

Defendants are three former employees of Plaintiffs who recently resigned from Guy Carpenter to join Lockton Re LLC ("Lockton Re").  On May 30, 2019, Plaintiffs filed a facially deficient Complaint (Dkt. No. 1 ("Compl.")), which Defendants moved to dismiss in large part (Dkt. Nos. 20-21).   On June 26, 2019, in response to Defendants' motion to dismiss, Plaintiffs filed an Amended Complaint (Dkt. No. 25 ("Am. Compl.")), in which they again allege that Defendants violated non-solicitation provisions of Restrictive Covenant Agreements ("RCAs") signed by each Defendant and breached fiduciary duties owed to Guy Carpenter.[1]  Specifically, Plaintiffs allege that, after joining Lockton Re, Mr. Gardner and Mr. Durant violated the RCAs by soliciting Guy Carpenter employees, including Collins, Am. Compl. ¶¶ 126-35 (Count I), and that Messrs. Durant, Gardner, and Yoder together violated the RCAs by soliciting a client (whom Plaintiffs have referred to as "Client A") for a prospective business opportunity that Guy Carpenter was also pursuing, *id.* ¶¶ 136-42 (Count II).  Plaintiffs also allege Defendants violated purported fiduciary duties to Guy Carpenter during their employment by soliciting certain Guy Carpenter employees and

---

[1] Plaintiffs also moved simultaneously for a temporary restraining order and preliminary injunction against Defendants, attaching various declarations and exhibits.  Dkt. Nos. 3, 8-15.  The Court granted Plaintiffs' request for a temporary restraining order on May 30, 2019.  *See* Dkt. No. 3.  On June 4, 2019, the parties filed a joint stipulation to extend indefinitely the Court's May 30, 2019 temporary restraining order.  *See* Dkt. No. 18.

clients on behalf of Lockton Re, *id.* ¶¶ 143-50 (Count III), and they seek declaratory relief that the RCA provisions are valid and binding, *id.* ¶¶ 151-57.

The Amended Complaint fails to adequately allege in Count III that Defendants breached any fiduciary duties to Guy Carpenter. The Amended Complaint alleges that, while they were employed with Guy Carpenter, Defendants did their jobs for Guy Carpenter, and it merely speculates that Defendants planned to join Lockton while discharging their duties as Guy Carpenter employees. These allegations cannot sustain a claim for breach of any fiduciary duties.

The Amended Complaint also fails to adequately allege in Count II violations of the RCA provisions purportedly restricting Defendants from soliciting prospective clients, as it ignores both the plain terms of the RCAs and the strong policy of New York law that favors competition and requires anti-competitive restrictive covenants to be read narrowly. Plaintiffs' allegations that Defendants improperly pursued a *prospective* opportunity with Client A are contrary to New York law refusing to enforce non-solicitation provisions regarding *prospective* client relationships. Plaintiffs also ignore the language in the RCAs that require that Plaintiffs allege two conditions were met to invoke its non-solicitation provisions as to clients: (1) that Defendants had "contact" with or obtained confidential information about the client during the last two years of their employment at Guy Carpenter; and (2) that Defendants solicited the client by offering the *same type of services* provided by Defendants while they were employed by Guy Carpenter. The RCAs specifically define "contact" to mean "interaction between the Employee and the client which takes place to further the business relationship, or making … sales to or performing or providing … services or products for the client on behalf of [Guy Carpenter]." Compl., Ex. A at 2.[2]

---

[2] Although the Amended Complaint purports to attach the RCA as Exhibit A, Am. Compl. ¶ 46, Plaintiffs did not attach any exhibits to the Amended Complaint. The RCA is attached as Exhibit A to the Complaint and should be deemed incorporated by reference into the Amended Complaint.

Plaintiffs fail to adequately allege that these two conditions were met as to Client A.  With respect to Mr. Durant, Plaintiffs have not alleged that he obtained and misused confidential information specific to Client A or that he *ever* sold or provided *any* services to Client A while employed at Guy Carpenter.  As for Mr. Yoder, Plaintiffs have not alleged that he obtained or misused confidential information about Client A or that he solicited Client A by offering or providing the *same* services or products he provided while employed at Guy Carpenter.  It is unsurprising that Plaintiffs cannot do so, because Mr. Yoder has changed job descriptions and responsibilities, including the products and services he offers to potential clients, since leaving Guy Carpenter.[3]  And with respect to Mr. Gardner, Plaintiffs still fail to allege that he had *any* post-resignation contact with Client A, instead relying on unsupported speculation about what Mr. Gardner might have known about Mr. Yoder's and Mr. Durant's activities.  What is more, the RFP issued by Client A for its reinsurance placement team in *London* (which occasioned the meeting between the client, two Lockton affiliates—Neil Nimmo and Paul Jack—and Mr. Durant and Mr. Yoder) had no overlap with the work Guy Carpenter had previously done for this client, which was based entirely on representing the client as its designated broker in the *United States*.  Plaintiffs' allegations of purported "solicitation" of Client A (or any other prospective client) are clearly deficient.

Finally, the Amended Complaint fails to adequately allege a violation of any restriction in the RCAs arising from Defendants' speaking with each other about leaving Guy Carpenter for Lockton Re during their employment with Guy Carpenter (so called "cross-solicitation"), or that Mr. Durant violated the RCA by soliciting another Guy Carpenter employee, Arthur R. Collins, to

---

[3] Even though Plaintiffs have not adequately alleged that Defendants violated the RCAs by soliciting Client A, since Plaintiffs filed this action on May 30, 2019, Defendants have scrupulously avoided doing anything that could even arguably be construed as an attempt to directly or indirectly solicit or service Client A and intend to continue to refrain from doing so pending a further ruling from this Court.

join Lockton Re.  New York law bars Plaintiffs' cross-solicitation claim.  And Plaintiffs fail to adequately allege that Mr. Durant had sufficient contact with, or gained any confidential information about, Collins during his employment with Guy Carpenter, such that Mr. Durant could be fairly restricted from soliciting him.

The reality is that Guy Carpenter's Amended Compliant fails to state valid claims for violations of fiduciary duties and the RCAs, and instead is an illegitimate attempt to stifle fair competition.  The potential business relationship with Client A is not due in any part to involvement from Defendants.  Rather, individuals associated with Lockton Re's United Kingdom affiliate, Lockton Companies LLP ("Lockton Companies"), have been independently attempting to develop Client A's international reinsurance market placement business for months in response to Client A's longstanding practice of having two reinsurance brokers represent it, one as a United States-based reinsurance broker and another as a London-based reinsurance broker.  Moreover, that Guy Carpenter is losing employees since its merger with Jardine Lloyd Thompson ("JLT") as a result of widespread employee dissatisfaction with the transaction and the prospects of working for this combined organization do not support a claim against Defendants.

Accordingly, Defendants' partial Motion to Dismiss should be granted.

## **BACKGROUND**

The Amended Complaint contains the following allegations relevant to this Motion:[4]

## I.    **Defendants' Employment with Guy Carpenter.**

Defendants were each previously at-will employees of Plaintiffs, or related entities, in various capacities.  Am. Compl. ¶¶ 24-26.  Mr. Gardner worked for Plaintiffs for 26 years, eventually

---

[4] Defendants acknowledge, as they must, that the Court must accept as true the factual allegations in the Amended Complaint solely for purposes of this motion and do not concede the truth of any of these allegations.

4

becoming Guy Carpenter's CEO of North America Operations, which involved servicing and maintaining relationships with certain Guy Carpenter clients. *Id.* ¶¶ 24, 28. Mr. Durant worked for Plaintiffs for 23 years, eventually becoming Guy Carpenter's Head of Sales and Segments, which involved managing Guy Carpenter's Sales division and working on investment and growth strategies for certain Guy Carpenter business segments. *Id.* ¶¶ 25, 29. Mr. Yoder began working for Guy Carpenter on September 19, 2017 as Chief Innovation and Product Development Officer, which involved overseeing the development of GC Genesis and GC Logic. *Id.* ¶¶ 26, 30-33.

In the course of their employment with Guy Carpenter, Defendants each signed an identical RCA. *Id.* ¶ 46.[5] As relevant here, each RCA states that, for a period of 12 months after ending employment with Guy Carpenter, Defendants shall not,

> (i) solicit clients of [Guy Carpenter] for the purpose of selling or providing products or services ***of the type sold or provided by [Defendants]*** while employed by [Guy Carpenter]; or (ii) induce clients or prospective clients of [Guy Carpenter] to terminate, cancel, not renew, or not place business with [Guy Carpenter]; or (iii) perform or supervise the performance of services or provision of products ***of the type sold or provided by [Defendants] while [Defendants were] employed by [Guy Carpenter]*** on behalf of any clients or prospective clients of [Guy Carpenter]; or (iv) assist others to do the acts specified [above].

Compl., Ex. A at 2. The RCAs state this restriction applies only to "clients or prospective clients of [Guy Carpenter] with which [Defendants] had contact with or about which [Defendants] obtained Confidential Information or trade secrets during the last two (2) years of [their] employment with [Guy Carpenter]," and defines "contact" as:

> [I]nteraction between the Employee and the client which takes place to further the business relationship, or making (or assisting or supervising the making of) sales to or performing or providing (or

---

[5] Mr. Durant and Mr. Yoder are also alleged to have signed separate, substantively identical Non-Solicitation Agreements. *Id.* ¶¶ 56-62. The terms of these agreements are functionally identical to the terms of the RCAs. *Compare id.* ¶¶ 47-48 *with* ¶¶ 58-59.

> assisting or supervising the performance or provision of) services or products for the client on behalf of [Guy Carpenter].

*Id.*

The RCAs also state that it places limited restrictions on the solicitation of Guy Carpenter employees, requiring that, during their employment and for 12 months thereafter, Defendants not

> directly or indirectly, solicit, or endeavor to cause any employee of [Guy Carpenter] with whom [Defendants], ***during the last two (2) years of [their] employment with [Guy Carpenter], came into contact for the purpose of soliciting or servicing business*** or about whom [Defendants] obtained Confidential Information to leave employment with [Guy Carpenter].

*Id.*  The RCAs state "Confidential Information is not generally known or available to the general public, but had been developed, compiled or acquired by [Guy Carpenter] at its effort and expense."  *Id.* at 3.

## II.   Defendants Fulfill Their Employment Responsibilities for Guy Carpenter.

On July 11, 2018, Mr. Durant, who was "responsible for, among other things, monitoring the sales performance of Guy Carpenter's offices and its individual managers and brokers," Am. Compl. ¶ 29, met in New York with Michael Jameson ("Jameson"), the Branch Manager for Guy Carpenter's Dallas office, to discuss Guy Carpenter client prospects.  *Id.* ¶¶ 87-88.  Mr. Durant met with Jameson again in Dallas on November 26, 2018 "to discuss significant Guy Carpenter prospects" and to "me[e]t with Jameson's entire team."  *Id.* ¶ 88.  Plaintiffs do not allege *any* facts to support any inference that Mr. Durant did anything other than carry out his job responsibilities to Guy Carpenter during those meetings.

In late January 2019, Mr. Yoder, whose position at Guy Carpenter made him "responsible for … GC Genesis," *id.* ¶ 5 (internal quotation marks omitted), briefly spoke with the CEO of "a longtime, substantial Guy Carpenter client" (whom Plaintiffs refer to as "Client A," *see* ECF No. 13 ("Dew Decl.")) at an industry conference in Naples, Florida, where Mr. Yoder was presenting

on GC Genesis and InsurTech—a partnership of companies that use technological innovations to create efficiencies or other improvements in the insurance industry, Am. Compl. ¶ 103.  Plaintiffs allege that, in January 2019, Mr. Yoder "presumably … had already decided to join Lockton."  *Id.* But this discussion was arranged by Hartwell Dew, Client A's contact at Guy Carpenter, at the request of the CEO of Client A.  Dew Decl. ¶ 16.  The purpose of the conversation was "specifically to discuss Guy Carpenter's GC Genesis program, and how it could benefit Client A."  *Id.* Plaintiffs do not allege *any* facts to support an inference that Mr. Yoder did anything other than carry out his job responsibilities during this conversation.

In late February 2019, Mr. Gardner, Jameson's direct supervisor, met with Jameson to discuss Jameson's and his team's annual compensation.  Am. Compl. ¶ 86.  Again, Plaintiffs do not allege *any* facts to support any inference that Mr. Gardner did anything other than carry out his job responsibilities to Guy Carpenter during that meeting.

On February 28, 2019, Mr. Gardner, who was responsible for "strengthening and maintaining Guy Carpenter's relationships with many of its largest and most important clients," *id.* ¶ 28, met with the CEO of Client A, *id.* ¶ 102.  Plaintiffs allege that "presumably" the purpose this meeting was to "lay[] the groundwork for [an] improper solicitation" of Client A by Mr. Gardner when he joined Lockton Re.  *Id.*  In fact, however, the day before Mr. Gardner met with the CEO of Client A, Client A had already informed Dew that it "was going to be putting a portion of its international reinsurance placement out for a Request for Proposal ('RFP'), and the CEO asked that Guy Carpenter submit an RFP for this work."  Dew Decl. ¶ 5.  *Dew was present for the meeting* between Mr. Gardner and the CEO of Client A on February 28, 2019.  *Id.* ¶ 6.  Dew was "pleased to have [Mr. Gardner] at this meeting, particularly given Client A's decision to issue an RFP for the portion of its international reinsurance placement," and nowhere suggests that during this

meeting, Mr. Gardner was laying the groundwork for improper solicitation. *Id.* Plaintiffs do not allege *any* facts to support any inference that Mr. Gardner did anything other than carry out his job responsibilities to Guy Carpenter during that meeting.

These allegations merely demonstrate that Defendants continued to fulfill their roles until they resigned from their positions at Guy Carpenter.

### III.   Defendants Resign from Guy Carpenter.

On March 7, 2019, Defendants provided 60-day notice to Guy Carpenter of their intentions to resign and join Lockton Re.  Am. Compl. ¶ 4.  On May 7, 2019, Defendants' resignations from Guy Carpenter became effective, and they began working for Lockton Re.  *See id.* ¶ 81.

### IV.   Mr. Durant Calls Arthur R. Collins After Joining Lockton Re.

On May 16, 2019, Collins, a current Guy Carpenter employee, received two missed calls from a phone number allegedly belonging to Mr. Durant. *Id.* ¶ 93.  On May 21, 2019, Mr. Durant spoke with Collins on the phone for 26 minutes. *Id.* Durant allegedly explained to Collins "why he had chosen to join Lockton and why he believed others should make the same choice," and he allegedly told Collins "Lockton was determined to recruit already-successful brokers." *Id.* ¶ 99.

These allegations do not show that Durant breached the RCA.  The RCA applies only if Durant had "contact" with Collins during the last two years of his employment with Guy Carpenter "for the purpose of soliciting or servicing business," or if he obtained confidential information about Collins.  Compl., Ex. A at 2.  But all Plaintiffs allege is that Durant knew Collins while the two worked for Plaintiffs, Am. Compl. ¶¶ 94-97, and that Durant met with Collins at an unspecified industry event in Vermont, *id.* ¶ 96.  Durant's work computer allegedly contained reports that included information about Collins' clients and prospects from 2017 through 2019, and Durant and Collins allegedly exchanged emails in 2018. *Id.* ¶¶ 95, 97.  These allegations are insufficient to establish that Durant had "contact" with or obtained confidential information about Collins

## V.     Mr. Durant and Mr. Yoder Meet with Client A After Joining Lockton Re.

On May 23, 2019, after they had begun working for Lockton Re, Mr. Durant and Mr. Yoder attended a meeting with two representatives of Lockton Re's UK affiliate and Client A, "seeking to land a large portion of [Client A's] international book of business." *Id.* ¶ 101.  Mr. Gardner is not alleged to have had any involvement in this meeting, other than Plaintiffs' purely speculative allegations that he must have known of its occurrence.  *See id.* ¶¶ 101, 106.

This meeting had *nothing* to do with Mr. Yoder's responsibilities with GC Genesis, Insur-Tech, or GC Logic.  Moreover, this meeting was not to discuss anything involving Client A's designated U.S. placement broker—it focused solely on appointing Client A's *international* rein-surance placement team—business that Guy Carpenter never had, and business that neither Mr. Durant nor Mr. Yoder had worked on with Client A previously.  This was business that represent-atives of Lockton Re's affiliates had been developing for months, wholly independent of the three Defendants here.  Although ultimately Mr. Yoder and Mr. Durant—along with others—met with Client A, the portion of the reinsurance placement addressed at this meeting had no overlap with the work Guy Carpenter previously did for this client.  There is also no allegation that Defendants used or disclosed any Guy Carpenter confidential information in this meeting with Client A.

### STANDARD OF REVIEW

"To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must 'provide the grounds upon which [the] claim rests.'"  *Oliver Wyman, Inc. v. Eielson*, 2016 WL 5339549, at *5 (S.D.N.Y. Sept. 22, 2016) (Sullivan, J.) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must accept as true only a complaint's factual allegations, not legal conclusions.  *Oliver Wyman*, 2016 WL 5339549, at *5.

## ARGUMENT

### I.   Plaintiffs Fail to Allege Defendants Violated Any Fiduciary Duty (Count III).

Plaintiffs allege Defendants violated their fiduciary duties to Guy Carpenter when (1) Mr. Durant met with Jameson in Dallas on November 26, 2018; (2) Mr. Yoder spoke briefly with Client A's CEO in January 2019; and (3) Mr. Gardner met with Dew and Client A's CEO on February 28, 2019.  Am. Compl. ¶¶ 143-50.  These allegations demonstrate nothing more than Defendants performing their job duties while they were employed by Guy Carpenter.  The Amended Complaint fails to allege any additional support that could sustain a claim for breach of fiduciary duties.

### A.   Employees' Fiduciary Duties to Employers Are Limited.

To establish a breach of fiduciary duty, including the duty of loyalty, the plaintiff must allege that the "fiduciary commit[ed] an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, misuse of confidential information, solicitation of employer's customers before cessation of employment, conspire[ed] to bring about mass resignation of an employer's key employees, or usurpation of the employer's business opportunity."  *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013).  An employee's fiduciary duties generally cease when the employee is no longer working for the former employer.  *See id.* (citing *Am. Fed. Grp., Ltd. v. Rothenberg*, 2003 WL 22349673, at *13 (S.D.N.Y. Oct. 14, 2003)).[6]

---

[6] The only duties former employees owe are not to misappropriate a former employer's confidential information and "not to divert business in which a former employer has the requisite 'tangible expectancy.'"  *Poller*, 974 F. Supp. 2d at 227 (quoting *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 914 (2d Cir. 1998)).  Plaintiffs do not claim Defendants violated their fiduciary duties after they left Guy Carpenter.  In any event, Plaintiffs do not allege Defendants misappropriated any confidential information, and Plaintiffs had no "tangible expectancy" in Client A's *prospective*

**B.      Plaintiffs Fail to Allege that Defendants Violated Any Fiduciary Duty Owed to Plaintiffs.**

The Amended Complaint lacks any factual allegations to support the inference that Defendants violated any fiduciary duties while employed by Guy Carpenter.

**1.      Mr. Durant's November 2018 Trip to Dallas Did Not Breach His Fiduciary Duties.**

Plaintiffs' sole allegation against Mr. Durant in Count III remains that he breached his fiduciary duties by traveling to Dallas in November of 2018 to meet with Jameson.  Am. Compl. ¶ 146.  But there was nothing untoward about Mr. Durant's trip to Guy Carpenter's Dallas office. It was within Mr. Durant's responsibilities as Head of Sales to "monitor[] the sales performance of Guy Carpenter's offices and its individual managers and brokers." *Id.* ¶ 29.  In this role, he was *expected* to "interact[] with every Guy Carpenter branch office across the United States." *Id.*  Thus, Mr. Durant's trip to visit a Guy Carpenter branch office was squarely within the performance of his job duties, and Plaintiffs do not allege that Mr. Durant undermined Guy Carpenter's business in any way during this trip.  Plaintiffs surmise instead that Mr. Durant had access to confidential information about "the MGA team" and prospective clients during his one-day trip to Guy Carpenter's Dallas office. *Id.* ¶ 88.  But again, access to such information was consistent with Mr. Durant's duties as Head of Sales, and simply showing a "keen interest" in a branch does not support an inference that Mr. Durant breached any fiduciary duty. *Id.*

Plaintiffs' breach of fiduciary duty claim as to Mr. Durant at bottom relies entirely on the allegation that Mr. Durant's November 28, 2018 trip to Dallas was his first visit to that branch, and that trip happened to occur "at the very same time as he, Gardner and Yoder were planning

---

international reinsurance market placement business, as such business was subject to an RFP process. *See Am. Fed. Grp.*, 136 F.3d at 906 ("tangible expectancy" requires "more … than a desire or a hope" (citations omitted)).

their defection to Lockton." *Id.* ¶ 146.  But Plaintiffs have failed to allege any facts to show that Mr. Durant's Dallas trip was unfair to or injured Guy Carpenter.  The law is clear that "an employee is not prohibited from making arrangements or preparations to compete with his principal before terminating his agency, provided he does not act unfairly or injure his principal." *Poller*, 974 F. Supp. 2d at 227 (citation omitted).  Plaintiffs' speculation about when Mr. Durant planned to join Lockton is insufficient to support a breach of fiduciary duty claim.

### 2. Mr. Yoder's Conversation with Client A in January 2019 Did Not Breach His Fiduciary Duties.

The same is true of Mr. Yoder's conversation with Client A's CEO in January 2019.  This was a brief conversation Mr. Yoder had at a conference during which Mr. Yoder spoke about technology to a large audience.  Plaintiffs do not allege Mr. Yoder undermined Guy Carpenter in this conversation with Client A, nor that he misappropriated confidential information at any point during his employment with Guy Carpenter.  Yet again, Plaintiffs' fiduciary duty claim relies entirely on the temporal "proximity" of the meeting to the date of Mr. Yoder's resignation from Guy Carpenter and the date of Mr. Gardner's February 28, 2019 conversation with Client A's CEO. *See* Am. Compl. ¶ 147.  But Plaintiffs allege *no facts* from which the Court can infer that Mr. Yoder committed fraud or treated Guy Carpenter unfairly by having a conversation with Client A's CEO *at the request* of a Guy Carpenter colleague.  Plaintiffs must allege facts from which the Court can plausibly infer wrongful or fraudulent acts, and their failure to do so is fatal to Plaintiffs' breach of fiduciary claim as to Mr. Yoder. *See Poller*, 974 F. Supp. 2d at 227.

### 3. Plaintiffs Have Not Alleged that Mr. Gardner Breached His Fiduciary Duties by Meeting with Client A in February 2019.

Finally, Plaintiffs' claim as to Mr. Gardner suffers from the same deficiency:  Plaintiffs rely solely on the timing of Mr. Gardner's February 28, 2019 meeting with Client A's CEO, shortly before he resigned from Guy Carpenter, and contend that this fact *alone* is sufficient to support a

breach of fiduciary duty claim.  *See* Am. Compl. ¶ 147.  That is incorrect.  *See Poller*, 974 F. Supp. 2d at 227 (employee may make "arrangements or preparations to compete with his principal before terminating his agency").  Mr. Gardner met with Client A's CEO to assist Guy Carpenter's efforts in the RFP for Client A's international reinsurance market placement business *at the request* of a colleague; there is no allegation in the Amended Complaint that Mr. Gardner mentioned Lockton Re in that meeting or otherwise undermined Guy Carpenter.  If Mr. Gardner had acted to harm Guy Carpenter in this meeting with Client A's CEO, Dew, a current Guy Carpenter employee who was also present at the meeting, would be able to attest to such conduct, and surely would have said as much in his declaration.  But Dew reports he was "pleased" by Mr. Gardner's presence at the meeting with Client A's CEO.  Dew Decl. ¶ 6.  Plaintiffs have not alleged Mr. Gardner breached his fiduciary duties by advocating for Guy Carpenter to Client A.

## II.     Plaintiffs Fail to Allege Defendants Violated the Restrictive Covenant Not to Solicit Plaintiffs' Clients (Count II).

Plaintiffs allege Defendants violated the RCA provisions restricting the solicitation of certain Guy Carpenter clients solely because Mr. Durant and Mr. Yoder, along with two other Lockton affiliates, met with Client A on May 23, 2019.  Am. Compl. ¶¶ 101-06, 136-42.  This single meeting is insufficient to state a claim for beach of the client non-solicitation provision of the RCA, and thus Count II of the Amended Complaint should be dismissed.  *See Oliver Wyman*, 2016 WL 5339549, at *8 ("Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." (quoting *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 347 (S.D.N.Y. 2013))).

### A.     Restrictive Covenant Agreements Are Construed Narrowly.

Covenants not to compete and restrictive covenants are narrowly construed by New York courts.  *See, e.g.*, *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999) (restrictive covenants

enforceable only to extent required for the protection of legitimate interest of the employer); *see also Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (1977); *Scott Paper Co. v. Finnegan*, 101 A.D.2d 787, 789 (1st Dep't 1984) (quoting *Am. Broad. Cos. v. Wolf*, 52 N.Y.2d 394, 404 (1981)).  Indeed, "powerful considerations of public policy militate against sanctioning the loss of a [person's] livelihood." *Elexco Land Servs., Inc. v. Hennig*, 2012 WL 5288760, at *2 (W.D.N.Y. Oct. 23, 2012) (quoting *Karpinski v. Ingrasci*, 28 N.Y.2d 45, 49 (1971)).

Thus, New York law permits restrictive covenant agreements only if they are reasonable. *Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 276 (S.D.N.Y. 2002).[7]  In deciding whether to enforce a restrictive covenant agreement, the "courts must weigh the need to protect the employer's legitimate business interests against the employee's concern regarding the possible loss of livelihood, a result strongly disfavored by public policy in New York." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999).  The law counsels against reading a restrictive covenant so broadly as to impinge upon "the vital employee interests associated with establishing a livelihood." *Poller*, 974 F. Supp. 2d at 221.

### B.    The RCAs Cannot Be Enforced to Restrict Defendants From Soliciting Client A or Other Prospective Clients of Guy Carpenter's.

To allege a violation of the prospective client-solicitation restriction of the RCA, under the RCA's own terms, Plaintiffs must allege that: (1) Client A is a client whom the Defendant may not solicit because that Defendant, "while employed by [Guy Carpenter]," "had contact" with Client A or "obtained Confidential Information or trade secrets" about Client A "during the last two (2) years of [his] employment with [Guy Carpenter]"; and (2) the Defendant nevertheless directly or indirectly "solicit[ed]" Client A "for the purpose of selling or providing [those same] products

---

[7] The RCAs in this case are governed by New York law.  Compl., Ex. A at 6.

or services"; "induce[d]" Client A "to terminate, cancel, not renew, or not place business with [Guy Carpenter]"; "perform[ed] or supervise[d] the performance of [those same] services or provision of [those same] products" for Client A; or aided and abetted others to so "solicit," "induce," "perform … services," or "supervise the performance of services." *See* Compl., Ex. A at 2.  Contact is defined as "interaction between the Employee and the client which takes place to further the business relationship, or making … sales to or performing or providing … services or products for the client on behalf of [Guy Carpenter]." *Id.*  Plaintiffs have not alleged that any Defendant meets both of these requirements.

### 1.    Plaintiffs Do Not Allege Interference with an Existing Protected Client Relationship

This Court has recognized time and again that non-solicitation provisions, like those in the RCAs at issue here, cannot be enforced to prevent former employees like Defendants from soliciting *prospective* clients.  Here, Plaintiffs contend that Defendants improperly solicited Client A's international brokerage reinsurance business—but this is business Guy Carpenter never had, and thus Defendants' pitch for Client A's international business does not violate their RCAs.

In *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326 (S.D.N.Y. 2018), Judge Koeltl held that, under New York law, non-solicitation agreements may be enforced only to protect the employer's *existing* client relationships and not to protect the employer's *prospective* client relationships.  *Id.* at 350.  Judge Koeltl explained that employers "do[] not have a legitimate interest" in restraining former employees from soliciting prospective client relationships.  *Id.*; *see also Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 535 (S.D.N.Y. 2016) (former employee had "a plausible argument … that the non-solicitation agreement's inclusion of Marsh's prospective clients is not a reasonable limitation").  The only valid restriction on former employees' solicitation of prospective client relationships is that the former employees may not use their former

employer's confidential information. *DiGregorio*, 307 F. Supp. 3d at 351. "An employer does not forge a protectible client relationship with a prospective customer simply by sending the company a business proposal or making a pitch for its business in a sales meeting." *DiGregorio*, 307 F. Supp. 3d at 350; *Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *17 (S.D.N.Y. Oct. 31, 2008); *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 540 (S.D.N.Y. 2004) (employers have "no significant or special relationship with … potential clients").

Plaintiffs have submitted an affidavit that makes clear Client A's international reinsurance business was "out for" an RFP when Lockton pitched for it on May 23, 2019 and that "the CEO asked that Guy Carpenter submit an RFP for this work." Dew Decl. ¶ 5. Guy Carpenter therefore merely had a non-protectable *prospective* interest in Client A's international reinsurance brokerage appointment and could only seek to restrain Defendants' right to compete for that prospective business to preclude Defendants from using Plaintiffs' confidential information, which Defendants are not alleged to have done.

Plaintiffs' allegations in the Amended Complaint that Client A is a current client of Guy Carpenter does not render Guy Carpenter's prospective interest in Client A's ***prospective*** international reinsurance placement protectible. *See, e.g.*, Am. Compl. ¶ 101. Judge Koeltl specifically rejected a similar argument in *DiGregorio*, holding that prospective client relationships are non-protectible regardless of "the amount of time and expense" previously devoted by the employer to solicit or service that client. *DiGregorio*, 307 F. Supp. 3d at 350. Drawing an "appropriate line for how much contact the employee must have had with a prospective customer to establish a protectable client relationship" is so difficult, Judge Koeltl explained, that courts cannot effectively enforce any restriction on solicitation of potential client relationships. *Id.* Employers, such as Plaintiffs, simply do not have a legitimate business interest in precluding Defendants from

competing fairly in an RFP application process for a prospective business opportunity with Client A or any other potential business opportunities.

> ### 2. Plaintiffs Have Not Alleged that Mr. Durant Breached the RCA by Soliciting Client A.

Plaintiffs' allegations regarding Mr. Durant's purported solicitation of Client A do not pass muster. Plaintiffs do not allege Mr. Durant "sold or provided" "products or services" to Client A "while employed by [Guy Carpenter]," or that Mr. Durant had "contact" with Client A in the last two years of his employment with Guy Carpenter. *See* Compl., Ex. A at 2; *see also* Am. Compl. ¶ 138. Plaintiffs also do not allege that Mr. Durant actually *obtained* any confidential information. Instead, Plaintiffs rely solely on allegations that Mr. Durant "accessed" or "received" reports that may have contained "confidential and sensitive business information about" Client A. Am. Compl. ¶ 105. But the mere fact that Mr. Durant had access to Guy Carpenter's "GC Force" sales database—a database that *every* broker at Guy Carpenter has access to—or the "Confidential Client and Prospects Portfolio" cannot support the inference that Mr. Durant actually obtained confidential information about Client A. Indeed, Plaintiffs describe these collections of data as "comprehensive" and "highly detailed." *Id.* ¶¶ 39-40. Absent some nonconclusory allegation that Mr. Durant *actually* obtained confidential information specifically about Client A, his ability to access these documents/databases is insufficient to support a conclusion that Mr. Durant obtained confidential information about Client A. *See Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 576 (S.D.N.Y. 2011) (holding that employees of a global firm, such as Plaintiffs, cannot fairly be charged with obtaining knowledge "of all information in [a] global firm's database"). Plaintiffs fail to allege any facts to show that Mr. Durant knows, or has used on behalf of Lockton Re, any confidential information about Client A that may be contained in these reports. Plaintiffs therefore cannot establish any actual link between Client A and Mr. Durant that would

prevent Mr. Durant from soliciting Client A. Thus, under the terms of the RCA, Mr. Durant is not restricted from pursuing Client A in his capacity as a Lockton Re employee, and Plaintiffs' allegations in Count II with respect to Mr. Durant must be dismissed.

To the extent Plaintiffs assert the RCA restricts Mr. Durant from soliciting *every single* client or prospective client contained in the "comprehensive" and "highly detailed," Am. Compl. ¶¶ 39-40, Guy Carpenter databases Mr. Durant could access during his employment with Guy Carpenter, the RCA would be grossly overbroad. That interpretation would effectively convert the RCAs' purportedly limited non-*solicitation* provisions into wholesale non-*compete* clauses, as every single Guy Carpenter client and prospective client would be deemed restricted. Courts have routinely declined to enforce such overbroad non-compete provisions. *See, e.g.*, *Poller*, 974 F. Supp. 2d at 221 ("While courts have recognized the legitimate interest that companies maintain in safeguarding their good will—an interest that may properly be safeguarded through a reasonable non-solicitation provision in an RCA—such provisions will be 'considered overbroad if the former employee had not personally served those customers before and if the individual had never represented the firm's goodwill to those customers.'" (quoting Employment Law, Practitioner Treatise Series, § 8.10)); *Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina*, 9 A.D.3d 805, 807 (3d Dep't 2004) ("[T]he agreement is overly broad insofar as it seeks to prevent defendant from soliciting or performing work for *any client* of the employer."); *see also* May 30, 2019 Hr'g Tr. 23:23-24:1 ("THE COURT: … I also don't want to be in a situation in which my former employer identifies the entire S&P 500 as prospects.").

### 3. Plaintiffs Have Not Alleged that Mr. Yoder Breached the RCA by Soliciting Client A.

Plaintiffs allege only that Mr. Yoder had a meeting with Client A on May 23, 2019 to "land a large portion of that client's international book of business." Am. Compl. ¶ 101. Crucially,

Plaintiffs do *not* allege this meeting was an improper solicitation under the terms of the RCA: namely, Plaintiffs do not allege that this meeting was for the purpose of providing the same services or products Mr. Yoder provided to Client A while he was employed by Guy Carpenter.

Indeed, when Client A requested to speak with Mr. Yoder in January 2019 at a conference in which Mr. Yoder, in his capacity as a Guy Carpenter employee, "was presenting on GC Genesis and InsurTech-related issues," *id.* ¶ 103, it was "to discuss Guy Carpenter's GC Genesis program, and how it could benefit Client A," Dew Decl. ¶ 16.  GC Genesis was thus the "service or product" Mr. Yoder discussed with Client A while he worked at Guy Carpenter, within the meaning of the RCAs.  *See* Compl., Ex. A at 2.  The Amended Complaint alleges the purpose of the May 23, 2019 meeting Mr. Yoder and Mr. Durant had with Client A had *nothing* to do with GC Genesis or InsurTech.  Instead, Plaintiffs' Amended Complaint speculates that the purpose of the May 23 meeting with Client A was to pitch for Client A's "international book of business."  Am. Compl. ¶ 101.  Taken as true, this meeting had nothing to do with the services or products Mr. Yoder provided during his employment with Guy Carpenter, namely GC Genesis or InsurTech.  Mr. Yoder has changed job descriptions entirely since resigning from Guy Carpenter:  He no longer provides insurance technology consultancy services, which involved pairing cutting-edge technology companies with insurance carriers, as he did as head of GC Genesis.  For Lockton Re, Mr. Yoder is head of data analytics for a standard, reinsurance brokerage business—it was in that capacity alone that Mr. Yoder met with Client A.  Discovery will show Plaintiffs blatantly mischaracterize GC Genesis.  GC Genesis is a consulting service, not a reinsurance brokerage service, and Plaintiffs' attempt to make GC Genesis seem as if it is the same product or service as an international reinsurance brokerage appointment is futile.  *See id.* ¶¶ 32, 43.  Plaintiffs allege GC Genesis is a "component[] of Guy Carpenter's overall reinsurance brokerage products and service

offerings," *id.* ¶¶ 32, 43, but they do not and cannot allege GC Genesis has anything to do with Client A's international reinsurance brokerage appointment, *see id.* ¶ 101.  Thus, Mr. Yoder simply was not prohibited from engaging Client A in such a discussion, as that discussion is not alleged to have involved a pitch regarding GC Genesis, InsurTech, or any other product or service that competes with GC Genesis or InsurTech.  "[O]ffering a familiar face" to Client A in the form of Mr. Yoder is not a violation of the RCA, given that Mr. Yoder did not discuss GC Genesis or InsurTech or anything related to these types of services.  *Id.* ¶ 104.

Plaintiffs also allege that Mr. Yoder "presumably sought out confidential background information" about Client A in preparation for his meeting with Client A's CEO in January 2019.  But, in contrast to other portions of the Amended Complaint, Plaintiffs do not even attempt to allege Mr. Yoder *actually did* obtain any confidential information about Client A or used any such information in his May 23, 2019 meeting with Client A.  At this point, after Plaintiffs' extensive forensic "investigation" of Defendants that resulted in numerous quotations in the Amended Complaint from Defendants' company emails, *see id.* ¶¶ 107-08, Plaintiffs'a inability to even attempt to allege Mr. Yoder actually obtained confidential information about Client A confirms that he did not.  Accordingly, Plaintiffs' allegations in Count II with respect to Mr. Yoder must be dismissed.

### 4. Plaintiffs Have Not Alleged that Mr. Gardner Breached the RCA by Soliciting Client A.

Finally, with respect to Mr. Gardner, Plaintiffs have not alleged he had any contact with Client A *after* he left Guy Carpenter and joined Lockton Re.  Plaintiffs themselves allege that the last time Mr. Gardner had any contact with Client A was on February 28, 2019, while Mr. Gardner was working for Guy Carpenter.  *See id.* ¶¶ 102, 106.  Plaintiffs "presum[e]" that Mr. Gardner's February 28, 2019 meeting with Client A somehow "la[id] the groundwork" for an eventual "improper solicitation" by Lockton Re, but they fail to allege any facts to support such speculation.

*See id.* ¶ 102; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  But Plaintiffs have submitted a declaration by Dew, who admits he was "pleased" by Mr. Gardner's presence at the February 28, 2019 meeting with Client A and offers no indication whatsoever that at this meeting—which Dew attended—Mr. Gardner was soliciting Client A's business on behalf of Lockton Re rather than Guy Carpenter. Dew Decl. ¶ 6.

Faced with the absence of any facts that could suggest that Mr. Gardner had any contact with Client A after his employment at Guy Carpenter, Plaintiffs instead hypothesize that, while Gardner did not *attend* the May 23 meeting with Client A, he "undoubtedly knew about [it]" and that it "would not have happened without his knowledge, involvement, and approval."  Am. Compl. ¶ 101.  Even if Plaintiffs alleged facts to show that Mr. Gardner knew about this meeting, mere *knowledge* that a meeting occurred between unrestricted Lockton Re employees and Client A is not prohibited by his RCA, nor have Plaintiffs alleged *any* facts that would permit the inference that Mr. Gardner was involved in this meeting in any way.  Count II must be dismissed as to him.

III.    **Plaintiffs Fail to Allege that Defendants Breached the RCAs by Soliciting Each Other or by Soliciting Collins (Count I).**

Plaintiffs claim that Defendants violated the RCA provisions restricting the solicitation of certain Guy Carpenter employees by soliciting each other to work at Lockton Re, and that Mr. Durant violated the same RCA provisions by soliciting Collins to join Lockton Re after Mr. Durant resigned from Guy Carpenter.  Am. Compl. ¶¶ 70-76, 93-100, 126-35.  Both claims fail.

A.    **The RCAs Cannot Restrict Defendants from Leaving Guy Carpenter for Lockton Re.**

Courts apply a three-pronged reasonableness test to assess whether an RCA provision is enforceable against employees.  *BDO Seidman*, 93 N.Y.2d at 388.  Under this test, "[a] restraint is

21

reasonable only if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *Id.* at 388-89. "The violation of any prong renders the covenant invalid." *FTI Consulting, Inc. v. Graves*, 2007 WL 2192200, at \*5 (S.D.N.Y. July 31, 2007).

This case is on all fours with *In re Document Technologies Litigation*, 275 F. Supp. 3d 454 (S.D.N.Y. 2017). There, Judge Rakoff applied the three-pronged reasonableness test to claims that former employees of an electronic discovery services provider had violated their restrictive covenants, and concluded that a restrictive covenant is unenforceable under New York law "insofar as it purports to prohibit at-will employees, who have yet to accept an offer of new employment, from 'inducing' or even 'encouraging' their coworkers to leave their present employer." *Id.* at 466. If an employer "desires to prevent its employees from coordinating their resignations, it is free to hire them pursuant to term employment agreements." *Id.* at 467. But it is not "proper" for an employer to "use restrictive covenants to supply itself all the benefits of term agreements while simultaneously retaining the right to lay off its personnel whenever it so desires." *Id.*

Judge Rakoff further explained that, as here, the RCA in *Document Technologies* purported to impose an undue hardship on employees because it amounted to an improper "contractual gag rule on employee complaints." *Id.* at 468; *cf. id.* at 466 (restrictive covenant stated, during employment and for 12 months after termination employee "may not 'attempt to hire, solicit, induce, recruit or encourage any other employees or agents of [former employer] to terminate their employment ... with [former employer] in order to work for any ... entity other than [former employer]'"); Compl., Ex. A at 2 (restricting Guy Carpenter employees from "[d]irectly or indirectly, solicit[ing], or endeavor[ing] to cause any [applicable] employee of [Guy Carpenter] … to leave employment with [Guy Carpenter]"). Accordingly, Judge Rakoff concluded that employees could

not be found in violation of their restrictive covenant agreements not to solicit employees simply by jointly meeting with a competitor employer and offering themselves as a "package deal." *Document Techs.*, 275 F. Supp. 3d at 467.

Despite the opportunity to amend, Plaintiffs have made no attempt to add allegations that distinguish this case from *Document Technologies*. Here, Plaintiffs do not allege that defendants jointly met with Lockton Re about future employment opportunities or pitched themselves to Lockton Re as a "package deal." *Id.* at 467. Plaintiffs merely allege Defendants spoke on the phone or in person on three occasions, sent a limited number of text messages and emails to each other (that Plaintiffs assume in a conclusory manner reflected unidentified Lockton Re-related discussions), and resigned on the same day. Am. Compl. ¶¶ 63-68, 72-74. Under *Document Technologies*, the RCAs cannot be enforced to prohibit such conduct.

### B.   Plaintiffs Fail to Allege Mr. Durant Improperly Solicited Collins.

The Amended Complaint does not establish that Mr. Durant was restricted from allegedly soliciting Collins to join Lockton Re after Mr. Durant had left Guy Carpenter.

Again, by its own terms, the RCA restricts Mr. Durant from soliciting only Guy Carpenter employees "with whom [he], ***during the last two (2) years*** of [his] employment with [Guy Carpenter], came into contact *for the purpose of soliciting or servicing business* or ***about whom [he] obtained Confidential Information***." Compl., Ex. A at 2 (emphases added). Plaintiffs have not adequately alleged Collins meets that description as to Mr. Durant.

Plaintiffs have not adequately alleged that Mr. Durant came into sufficient "contact" with Collins during the last two years of Mr. Durant's employment with Guy Carpenter. Plaintiffs allege Durant and Collins met at "a captive insurance industry event in Vermont while they were Captives specialists at Marsh [Mr. Durant] and Guy Carpenter [Collins]." Am. Compl. ¶ 96. Plaintiffs conspicuously omit the date of this event from the Amended Complaint, *see id.*, but a

declaration signed by Collins that Plaintiffs filed in connection with their motion for a preliminary injunction clarifies that this alleged interaction between Mr. Durant and Collins occurred "during the summer of 2016," which is ***more than two years*** before Mr. Durant's resignation from Guy Carpenter on May 7, 2019.  ECF No. 12 ("Collins Decl.") ¶ 6.  That contact simply did not restrict Durant from soliciting Collins.

Plaintiffs also point to emails regarding Durant and Collins from 2018, but they fail to adequately allege these emails constitute "contact" between Durant and Collins "for the purpose of soliciting or servicing business," Compl., Ex. A at 2, sufficient to restrict Durant from soliciting Collins.  *See* Am. Compl. ¶ 97.  In emails from April and May 2018, Durant allegedly asked Collins for information about a past client pitch and what Collins "would do for other groups."  *Id.* The question about past conduct was merely to obtain information for internal reports and laudatory emails, not to facilitate the solicitation or servicing of business.  Moreover, the relevance of the question about what Collins "would do for other groups" is not at all clear.  The May 25, 2018 email is not alleged to be "contact" between Collins and Durant but rather contact between Collins and "a third party."  *Id.*  And the emails from June 20, September 6, September 13, and October 1, 2018 are allegedly about "business" or Guy Carpenter "clients" but, in notable contrast to the other emails referenced in the Amended Complaint, devoid of any specific language indicating that these emails specifically addressed the issue of soliciting or servicing Guy Carpenter clients.

Neither do Plaintiffs adequately allege Mr. Durant obtained Confidential Information about Collins during the last two years of Mr. Durant's employment with Guy Carpenter.  Plaintiffs allege that Mr. Durant was "aware of Collins' role as head of Guy Carpenter's 'Captives' practice," Collins' "substantial experience at Guy Carpenter," and "Collins' notable portfolio of clients in the 'Property and Casualty' insurance space."  Am. Compl. ¶ 94.  Plaintiffs also allege Mr. Durant

24

was "familiar with the Captives space." *Id.* But Plaintiffs do not allege Mr. Durant's knowledge of "the Captives space" or of Collins' position at Guy Carpenter resulted in Mr. Durant possessing any type of legally protectable Confidential Information about Collins sufficient to trigger the RCA's prohibition against his soliciting Collins for employment at Lockton Re. *See Primo Enters. v. Bachner*, 148 A.D.2d 350, 352 (1st Dep't 1989) ("[A]n employer can have no legitimate interest in restricting the use of easily accessible information. Nor would it be a purposeful exercise for courts to prevent the use by one individual of information readily available to all.").

Plaintiffs also conflate confidential information about Guy Carpenter's *clients*, on whose accounts Collins happened to work, with confidential information *about Collins*. *See* Am. Compl. ¶ 95. The RCA only restricts solicitation of employees "about whom" Defendants obtained confidential information. Compl., Ex. A at 2. Plaintiffs allege Durant accessed information about Guy Carpenter's business that included work Collins performed, but Durant is not alleged to have obtained any information *about Collins himself*. The RCA does not purport to restrict Durant from soliciting all employees about whose work he was aware.[8]

## CONCLUSION

Defendants respectfully request the Court dismiss with prejudice Count I as to Defendants' alleged solicitation of each other and Mr. Durant's alleged solicitation of Collins, as well as the entirety of Counts II and III of the Amended Complaint.

---

[8] The Complaint also states Mr. Gardner had prior experience with Collins, but Plaintiffs do not allege Mr. Gardner had any involvement in Mr. Durant's calls to Collins in May 2019 or that Mr. Gardner solicited Collins to join Lockton Re in any other fashion. *See* Am. Compl. ¶¶ 93, 98-99.

Dated:   July 17, 2019                        Respectfully submitted,
         New York, NY
                                              SELENDY & GAY PLLC


                                    By:   /s/ *David Elsberg*
                                          David Elsberg
                                          Joshua S. Margolin
                                          Ryan W. Allison
                                          SELENDY & GAY, PLLC
                                          1290 Avenue of the Americas
                                          New York, NY  10104
                                          Telephone: 212-390-9000
                                          E-mail: delsberg@selendygay.com
                                                   jmargolin@selendygay.com
                                                   rallison@selendygay.com

                                          *Attorneys for Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder*