UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUY CARPENTER & CO. and MARSH & MCLENNAN COS.,<br><br>    Plaintiffs,<br><br>    v.<br><br>TIMOTHY GARDNER, NICHOLAS DURANT, and CLAUDE YODER,<br><br>    Defendants. | Case No. 19-cv-5062 (PAE) |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

Date: August 7, 2019

David Elsberg
Joshua S. Margolin
Ryan W. Allison
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
E-mail: delsberg@selendygay.com
       jmargolin@selendygay.com
       rallison@selendygay.com

*Attorneys for Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder*

# TABLE OF CONTENTS

|  |  | **Pages** |
|---|---|---|
| ARGUMENT | | 1 |
| I. | Defendants Did Not Breach Any Fiduciary Duties | 1 |
| II. | Defendants Did Not Breach the RCA's Purported Restriction on Soliciting Prospective Business | 3 |
| | A. Guy Carpenter Has No Protectible Interest in Preventing Defendants from Competing Fairly for Prospective Business Opportunities | 3 |
| | B. Defendants Did Not Violate the Terms of the RCA as to Client A | 6 |
| III. | The RCA Does Not Prevent Defendants from Joining Lockton or Mr. Durant from Soliciting Arthur Collins | 7 |
| | A. Guy Carpenter Has No Protectible Interest in Preventing Defendants from Joining Lockton Re as a Group | 8 |
| | B. Mr. Durant Was Not Restricted from Soliciting Collins | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Cases**

*BDO Seidman v. Hirshberg*,
　　93 N.Y.2d 382 (1999) .................................................................................................. 3, 10

*Cleveland-Goins v. City of New York*,
　　No. 99-CV-1109(AGS), 1999 WL 673343 (S.D.N.Y. Aug. 30, 1999) ............................. 6

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*,
　　42 N.Y.2d 496 (1977) .................................................................................................. 3, 10

*Duane Jones Co. v. Burke*,
　　306 N.Y. 172 (1954) ......................................................................................................... 8

*In re Document Techs. Litig.*,
　　275 F. Supp. 3d 454 (S.D.N.Y. 2017) .............................................................................. 8

*Marsh USA Inc. v. Schuhriemen,*
　　183 F. Supp. 3d 529 (S.D.N.Y. 2016), as amended, 2016 WL 2731588 (S.D.N.Y.
　　May 3, 2016) ..................................................................................................................... 6

*Mercer Health & Benefits LLC v. DiGregorio*,
　　307 F. Supp. 3d 326 (S.D.N.Y. 2018) ...................................................................... 3, 4, 6

*New Hope Family Servs., Inc. v. Poole*,
　　No. 5:18-CV-1419, 2019 WL 2138355 (N.D.N.Y. May 16, 2019) ................................. 4

*Poller v. Bioscrip, Inc.*,
　　974 F. Supp. 2d 204 (S.D.N.Y. 2013) .............................................................................. 2

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
　　813 F. Supp. 2d 489 (S.D.N.Y. 2011) .............................................................................. 2

*Stephenson v. PricewaterhouseCoopers, LLP*,
　　768 F. Supp. 2d 562 (S.D.N.Y. 2011) .............................................................................. 6

*Tottenham v. Trans World Gaming Corp.*,
　　No. 00 Civ. 796, 2002 WL 1967023 (S.D.N.Y. June 21, 2002) ....................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1

Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder ("Defendants") respectfully submit this reply memorandum of law in further support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Count I as to Defendants' alleged solicitation of each other and Mr. Durant's alleged solicitation of Arthur R. Collins ("Collins"), as well as the entirety of Counts II and III of the Amended Complaint filed by Plaintiffs Guy Carpenter & Co. ("Guy Carpenter") and Marsh & McLennan Cos. (together with Guy Carpenter, "Plaintiffs").

**ARGUMENT**

I. **Defendants Did Not Breach Any Fiduciary Duties**

Plaintiffs' breach of fiduciary duty claim fatally relies on the allegation that Defendants breached their duties by performing their regular responsibilities as Guy Carpenter employees while considering leaving for Lockton Re. *See* Opp. 23-24.[1] That is not a breach of fiduciary duty. Mr. Durant's visit with employees at Guy Carpenter's Dallas office, as well as Mr. Yoder's and Mr. Gardner's separate meetings with Client A's CEO, fell squarely within their duties as Guy Carpenter employees, and Plaintiffs do not claim otherwise. Plaintiffs have represented to this Court that Hartwell Dew, a current Guy Carpenter employee, "facilitated" the meeting between Mr. Yoder and Client A's CEO "[a]t the request of the CEO of Client A," Dew Decl. ¶ 16 (Dkt. No. 13), and that Dew, who was present for the meeting between Mr. Gardner and Client A's CEO, was "pleased" that Mr. Gardner attended in his capacity as "Guy Carpenter's CEO of North America Operations … given Client A's decision to issue an RFP for … its international reinsurance placement," *id.* ¶ 6. Plaintiffs do not allege that—while working for Guy Carpenter—any

---

[1] Defined terms herein have the same meaning given them in Defendants' opening Memorandum in Support of Their Partial Motion to Dismiss (Dkt. No. 32).

Defendant told Client A about Lockton Re, solicited Client A or solicited any Guy Carpenter employee in Dallas on behalf of Lockton Re, or used any Guy Carpenter confidential information for Lockton Re's benefit.

Defendants' conduct was not unlawful merely because it occurred while they were considering leaving for Lockton Re. *See* Opp. 24. Employees can adequately discharge their fiduciary duties to their current employers while, at the same time, seeking other employment. *See Poller v. Bioscrip, Inc.*, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013) (Oetken, J.) (employee may even advise "clients of a future planned departure" without breaching fiduciary duties). A contrary rule would present a catch-22, whereby an employee considering leaving would be prohibited from undertaking normal job responsibilities. There is no factual allegation in the Amended Complaint that Defendants prepared to leave for Lockton "at [Guy Carpenter's] expense" or misused Guy Carpenter "resources, time, facilities, or confidential information" while working for Guy Carpenter. Opp. 25 (quoting *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 521 (S.D.N.Y. 2011) (Katz, M.J.)). Any separate discussions or plans Defendants engaged in between November 2018 and March 2019 related to Lockton Re would be lawful "'preparations to compete' with Guy Carpenter." *See* Opp. 24 (quoting *Poller*, 974 F. Supp. 2d at 227).

To the extent Plaintiffs claim breaches of fiduciary duty based on a meeting with Client A that occurred *after* Defendants joined Lockton Re, *see* Opp. 25, their claim fails because Guy Carpenter had no valid interest in prospective business opportunities with Client A. Such a claim would rest entirely on a conclusory (and false) allegation that Defendants misused confidential information at this meeting with Client A, as discussed below in Point II.A. Plaintiffs' breach of fiduciary duty claims fail.

II. **Defendants Did Not Breach the RCA's Purported Restriction on Soliciting Prospective Business**

Plaintiffs' claims based on Defendants' alleged solicitation of Client A remain inadequate.

A. **Guy Carpenter Has No Protectible Interest in Preventing Defendants from Competing Fairly for Prospective Business Opportunities**

Plaintiffs do not contest that the Guy Carpenter RCA (the "RCA") is unenforceable to the extent it purports to prohibit Defendants from competing with Guy Carpenter for prospective business. *See Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 350 (S.D.N.Y. 2018) (Koeltl, J.). Instead, Plaintiffs assert that in describing Client A's international business as a "prospective" business opportunity, Defendants are "[s]plitting hairs as finely as possible," Opp. 14, and they ask the Court to apply the RCA broadly to fit Client A's *prospective* business within the definition of an *existing* client relationship, *see* Opp. 14-15. But it is Plaintiffs' position that runs directly contrary to New York law, which requires restrictive covenants to be construed narrowly. *See BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999). Restrictive covenants are "disfavored by the law" because they limit one's ability to make a living by preventing former employees "from pursuing a similar vocation after termination of employment." *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (1977). They are justified "only to the extent necessary to protect the employer from unfair competition." *Id.*

Under *Mercer Health & Benefits LLC v. DiGregorio*, there was nothing unfair about Defendants competing with Guy Carpenter for Client A's prospective international business. Plaintiffs attempt to distinguish *DiGregorio*, arguing that it does not address the validity of an RCA's restriction on soliciting "new business from a current client." Opp.15 (emphasis omitted). But the rule in *DiGregorio*—that a former employer cannot use an RCA to gain an artificial advantage in competing for prospective business—applies squarely to this case. *See DiGregorio*, 307 F. Supp. 3d at 350-51. Client A's international business did not yet belong to Guy Carpenter. Rather,

Client A had begun to solicit bids for that business from other reinsurance companies even before Defendants left Lockton Re—as demonstrated by Plaintiffs' own representations to this Court. *See* Dew Decl. ¶ 5. It was lawful for Defendants to compete in that bidding process. *See DiGregorio*, 307 F. Supp. 3d at 350-51.

Plaintiffs claim that Defendants "mischaracterize" Client A's international business as "prospective" and "improper[ly]" rely on "*ultra vires* allegations" beyond the Amended Complaint to distinguish Client A's domestic business, which allegedly belonged to Guy Carpenter, from its international business, which was open for bid. Opp. 14. Plaintiffs omit that the so-called "*ultra vires*" source for the assertion that Guy Carpenter had only a prospective interest in Client A's international business is the sworn declaration of Guy Carpenter employee Hartwell Dew, which *Plaintiffs submitted* in support of their application for a preliminary injunction. *See* Memorandum in Support of Mot. to Dismiss (Dkt. No. 32) at 16 ("Br.") (citing Dew Decl. ¶ 5). Dew stated under oath that Client A's international business was "out for" an RFP when Lockton Re pitched for it on May 23, 2019. Dew Decl. ¶ 5. And in their own brief on this motion, Plaintiffs acknowledge that Client A's international business did not belong to Guy Carpenter but rather "*Guy Carpenter was pursuing … Client A's international business*" when Defendants resigned and joined Lockton Re. Opp. 11 (emphasis added). It is entirely proper for the Court on this motion to consider the fact that Guy Carpenter was competing in an RFP for Client A's international business rather than acting as Client A's current international reinsurance broker. *See, e.g.*, *New Hope Family Servs., Inc. v. Poole*, No. 5:18-CV-1419 (MAD/TWD), 2019 WL 2138355, at *10 (N.D.N.Y. May 16, 2019) (considering "the complaint and submissions in support of the motion for a preliminary injunction" in granting a motion to dismiss).

4

Plaintiffs' assertion that Defendants breached the RCA because they used Guy Carpenter's confidential information to pitch Client A fails. *See* Opp. 15. This new theory is not plausibly supported by the Amended Complaint. Plaintiffs do not allege in the Amended Complaint any facts that suggest Mr. Yoder or Mr. Durant used any confidential information belonging to Guy Carpenter in Lockton Re's meeting with Client A on May 23, 2019. The Amended Complaint contains no allegation about what was said during Lockton Re's May 23 meeting with Client A, and as explained below in Point II.B, it does not adequately allege that Mr. Durant or Mr. Yoder ever actually obtained any Guy Carpenter confidential information about Client A that they could have used in that meeting.

Indeed, the Amended Complaint fails to allege that Mr. Durant or Mr. Yoder possessed any Guy Carpenter confidential information about Client A after leaving for Lockton Re. If anything, the Amended Complaint suggests the opposite—before leaving Guy Carpenter, Defendants returned to "Guy Carpenter over 30,000 electronic files that Defendants had on their personal devices, as well as a box of hard-copy documents that Yoder had." Am. Compl. ¶ 119 (emphasis omitted). Even after Plaintiffs' "forensic review" of Guy Carpenter's documents and data to "support their claims against Defendants," Opp. 12, the Amended Complaint fails to allege that Defendants improperly retained a single document or electronic file containing confidential information belonging to Guy Carpenter. The Court should deny Plaintiffs' request to go on an ill-conceived fishing expedition for evidence (which does not exist) that Defendants misused their confidential information in pitching Client A without ever being required to allege—in good faith—that such misuse actually occurred. *See Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 796 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (Knapp, J.) ("Discovery … is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out

allegations for which they initially have at least a modicum of objective support." (quoting *Cleveland-Goins v. City of New York*, No. 99-CV-1109(AGS), 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999) (Schwartz, J.)).[2]

### B. Defendants Did Not Violate the Terms of the RCA as to Client A

Even if the RCA could be enforced to prohibit Defendants from competing with Guy Carpenter for Client A's business, the Amended Complaint does not adequately allege a violation of the RCA's client solicitation provision. Plaintiffs fail to explain how the Amended Complaint adequately alleges that Mr. Durant actually obtained usable confidential information specific to Client A. They mischaracterize as a "straw man" Defendants' argument that the RCA would be unlawfully overbroad if it were interpreted to deem Mr. Durant had knowledge of confidential information about any client or prospective client that appeared—no matter how briefly—on any piece of paper or electronic file that Mr. Durant accessed in the last two years. Opp. 14-15. But that is the gravamen of Plaintiffs' claim against Mr. Durant with respect to Client A. At least one Judge of this Court has rejected a similar argument in the past, in a decision to which Plaintiffs offer no response. *See Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 576 (S.D.N.Y. 2011) (Holwell, J.) (employees cannot fairly be charged with obtaining knowledge "of all information in [a] global firm's database").

Attempting to save their claim against Mr. Yoder, Plaintiffs again contradict Dew's declaration and malign Defendants for relying on it. *See* Opp. 16-18. According to Plaintiffs' declarant, Dew, the purpose of Mr. Yoder's meeting with Client A's CEO in January 2019 was "to discuss

---

[2] Plaintiffs also contend that their client solicitation claim should survive because Client A does not meet the RCA's definition of a "prospective client." Opp. 15. That fundamentally misunderstands Defendants' argument based on *DiGregorio* and *Schuhriemen* that, as a matter of law and regardless of how it defines prospective clients, the RCA cannot be enforced to restrain fair competition in Client A's RFP process.

6

Guy Carpenter's GC Genesis program" and "InsurTech," Dew Decl ¶ 16, not to "further[] Guy Carpenter's primary business as the broker of reinsurance contracts for Client A," Opp. 17. Because Mr. Yoder is not alleged to have offered in his May 23, 2019 meeting with Client A the same products or services as those he offered at Guy Carpenter or allegedly discussed with Client A's CEO in January 2019 (*i.e.*, GC Genesis and InsurTech-related services)—in fact, his job responsibilities at Lockton Re no longer include such services—he did not violate the RCA.[3]

Finally, Plaintiffs fail to allege facts (as opposed to speculation) that Mr. Gardner solicited Client A for Lockton Re. Opp. 18. Plaintiffs simply guess that Mr. Gardner knew, and approved of, Mr. Durant's and Mr. Yoder's alleged solicitation of Client A, based on an incomplete understanding of the reporting structure of Lockton Re. Plaintiffs cannot contend that Mr. Gardner's mere alleged *knowledge* of the solicitation of Client A would constitute an indirect effort to aid that solicitation or subterfuge to circumvent the RCA, and they do not articulate any facts from which the Court can reasonably infer that Mr. Gardner had any involvement in any direct or indirect solicitation of Client A on behalf of Lockton Re. Plaintiffs' claims for breach of the client solicitation provision of the RCA fail.

### III. The RCA Does Not Prevent Defendants from Joining Lockton or Mr. Durant from Soliciting Arthur Collins

Plaintiffs' employee solicitation claims with respect to Defendants' alleged solicitation of each other and Mr. Durant's alleged solicitation of Arthur R. Collins also fail.

---

[3] Plaintiffs do not even attempt to respond to Defendants' argument that the Amended Complaint does not adequately allege Mr. Yoder actually obtained Guy Carpenter confidential information about Client A. *See* Opp. 11, 16-18; Br. 20 (Mr. Yoder is not restricted from soliciting Client A because the Amended Complaint alleges only that he "presumably sought out confidential background information about" Client A in January 2019).

7

### A. Guy Carpenter Has No Protectible Interest in Preventing Defendants from Joining Lockton Re as a Group

Plaintiffs' attempts to distinguish this case from *In re Document Technologies Litigation*, 275 F. Supp. 3d 454 (S.D.N.Y. 2017) (Rakoff, J.), fall flat. To be sure, employers have an interest in preventing "coordinated *en masse* resignation[s]," but as in *Document Technologies*, that interest is not implicated here. Opp. 19 (quoting *Document Techs.*, 275 F. Supp. 3d at 466). *Document Technologies* involved *four* employees who left their former employer, *see* 275 F. Supp. 3d at 457, and this case involves *three* employees who left Guy Carpenter. As Judge Rakoff explained, that is far cry from classic *en masse* resignations where, for example, 90% of an employer's skilled workforce resigns as a group. *See id.* at 466 n.12 (citing *Duane Jones Co. v. Burke*, 306 N.Y. 172, 189 (1954)).[4]

Plaintiffs attempt to defend their cross-solicitation claims by relying on alleged evidence of Defendants' breaches of the RCA after leaving Guy Carpenter. *See* Opp. 20-21. But none of those arguments rebuts the purely legal conclusion Judge Rakoff reached in *Document Technologies*—that an employer lacks a legitimate interest in restraining a small number of employees from speaking about leaving for different employment. Regardless of what Defendants are alleged to have done after joining Lockton Re, Guy Carpenter's professed interest in preventing cross-solicitation remains legally illegitimate because, as Judge Rakoff explained, such a restriction is not necessary to protect against "*unfair* competition," it would impose "undue hardship" on Guy Carpenter employees, and it would be "injurious to the public." *Document Techs.*, 275 F. Supp. 3d at 466-68. Guy Carpenter can protect its "confidential information and client relationships," Opp. 20, through other provisions of the RCA that would be unaffected by a ruling that the RCA does

---

[4] This distinguishes *McDaniel*, which Plaintiffs admit did involve *en masse* resignations of 13 employees. Opp. 19 n.4.

8

not prohibit three employees from speaking about seeking other employment (*i.e.*, the RCA's independent restrictions on misuse of confidential information and soliciting current clients).

### B. Mr. Durant Was Not Restricted from Soliciting Collins

Plaintiffs cannot establish that Mr. Durant was restricted from soliciting Collins on the grounds that he "came into contact with [Collins] for the purpose of soliciting or servicing business." Dkt. No. 10-1, at 2; *see* Opp. 21-23. Plaintiffs concede that the alleged meeting between Mr. Durant and Collins in Vermont occurred three years ago and, thus, does not trigger the RCA's restriction on soliciting employees. Opp. 21. Plaintiffs also attempt to brush aside the Amended Complaint's conspicuous lack of specificity with respect to Mr. Durant's alleged emails with Collins. Opp. 22. But Plaintiffs admit they have conducted "a forensic review of Durant's work computer"—they have Mr. Durant's emails. Opp. 22. It is unreasonable for Plaintiffs to ask the Court to "infer" that Mr. Durant's email contact with Collins in the last two years triggered the RCA restrictions when instead they could have attached the full emails to the Amended Complaint and let them speak for themselves. Opp. 22. The failure to do so is telling.

Plaintiffs restate the confidential information about Collins' clients that Mr. Durant allegedly obtained in the last two years. Opp. 22-23. But they fail to explain why information *about "Collins' business and clients"* (such as Guy Carpenter's business wins), Am. Compl. ¶ 11 (emphasis added), should be considered confidential information *about Collins*, which the RCA defines as "personnel information, such as the identity and number of the Company's other employees and officers, their salaries, bonuses, benefits, skills, qualifications and abilities." Opp. 22 n.6 (quoting Dkt. No. 10-1, at 3). The Amended Complaint does not allege that Mr. Durant obtained any confidential information about Collins' personnel file, compensation, benefits, qualifications,

or abilities.[5] The RCA restricts Mr. Durant from soliciting employees "*about whom*" he obtained confidential information, not employees *about whose clients* he obtained confidential information. Dkt. No. 10-1, at 2 (emphasis added). Plaintiffs could have included language in the RCA that purported to restrict a former employee from soliciting employees about *whose clients* the former employee learned confidential information, but they did not. And, as noted above, the RCA is a disfavored type of contract that is to be construed narrowly. *See BDO Seidman*, 93 N.Y.2d at 388-89; *Columbia Ribbon & Carbon Mfg.*, 42 N.Y.2d at 499.[6]

Plaintiffs' claims for breach of the employee solicitation provision of the RCA fail insofar as they arise out Defendants' alleged solicitation of each other and Mr. Durant's alleged solicitation of Collins.

## **CONCLUSION**

Defendants respectfully request the Court dismiss with prejudice Count I as to Defendants' alleged solicitation of each other and Mr. Durant's alleged solicitation of Collins, as well as the entirety of Counts II and III of the Amended Complaint.

---

[5] Plaintiffs assert in their Brief, citing Section I.B. of their Facts Section, that Mr. Durant "obtained confidential personnel information regarding Collins, including compensation and performance details as well as information regarding his skills, qualifications and abilities." Opp. 22. There is no allegation to that effect in either the Facts Section of Plaintiffs' Brief or the Amended Complaint. Plaintiffs only assert that, as a general matter, Mr. Durant "had access to confidential information concerning Guy Carpenter's employees," Opp. 4; *accord* Am. Compl. ¶ 41, not that Mr. Durant actually "*obtained* confidential personnel information *regarding Collins*" in particular. *See* Opp. 22 (emphasis added).

[6] Regardless how courts may have enforced different restrictive covenant agreements in other cases against former employees who merely "had access to confidential information," Opp. 23 n.7, the RCA in this case only restrains Defendants from soliciting Guy Carpenter employees about whom they actually "obtained" confidential information, Dkt. No. 10-1, at 2.

Dated: August 7, 2019  
New York, NY

Respectfully submitted,

SELENDY & GAY PLLC

By: /s/ *David Elsberg*
David Elsberg
Joshua S. Margolin
Ryan W. Allison
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
E-mail: delsberg@selendygay.com
       jmargolin@selendygay.com
       rallison@selendygay.com

*Attorneys for Defendants Timothy Gardner, Nicholas Durant, and Claude Yoder*